Lisa C. VANDEVENTER, Douglas L. Feltner, Rita Phelps, Brandi Jo Russell, and Sherry Wampler, Plaintiffs,

v.

WABASH NATIONAL CORPORATION, Defendant.

No. 4:93cv46AS.

United States District Court,
N.D. Indiana,
Hammond Division, at Lafayette.

Oct. 17, 1994.

Marshall R. Crawford, A. Robert Thayer, Chavez Crawford and Thayer, Lafayette, IN, for plaintiffs.

Keith R. Fafarman, Jay T. Seeger, Robert L. Bauman, Ellen R. Klausen, Gambs Mucker Bauman and Seeger, Lafayette, IN, for defendant.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS OF PLAINTIFF DOUGLAS L. FELTNER

ALLEN SHARP, Chief Judge.

Plaintiff Douglas L. Feltner has filed suit against his former employer Wabash National Corporation, alleging sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The plaintiff alleges both *quid pro quo* and hostile work environment sexual harassment, and retaliatory discharge. Wabash has filed a motion for summary judgment which has been extensively briefed. The court is now prepared to rule.

For the reasons described herein, the defendant's motion for summary judgment is granted, and the plaintiff's claims are dismissed.

### INTRODUCTION

Douglas Feltner was employed as a drill operator by Wabash National Corporation at its Lafayette, Indiana plant from November 4, 1992 until May 17, 1993. Mr. Feltner was absent from work Tuesday, May 11, 1993 through Friday, May 14, 1993 for medical reasons. Feltner Deposition at 42. The plant nurse told Mr. Feltner on May 11, 1993 that he had to request a leave of absence by Friday, May 14, 1993 or risk termination. *Id.* at 39–41. Mr. Feltner was already aware of this policy from employee orientation and the handbook. *Id.* at 40–41, 43. Mr. Feltner did not request a leave of absence by Friday, May 14, 1993, or at any time. *Id.* Mr. Feltner returned to work on Monday, May 17, 1993 to find that he was terminated. *Id.* at 52.

When Mr. Feltner returned to work on May 17, he gave a physician's report to the company nurse, Ms. Mary Jo Gutwein. *Id.* at 119. Ms. Gutwein told Mr. Feltner that the physician's report was late, and she would have to go get Ms. Rhonda Peters from the Human Resources Department. *Id.* at 120. Ms. Peters came in and told Mr. Feltner that "she was sorry, she was going to have to terminate due to the fact that I did not get the attending physician's report back in on time." *Id.* Mr. Feltner told her it was not his fault that he could not get it in on time. *Id.* Mr. Feltner then testified that Ms. Peters "said that she was sorry, she had to follow company policy. I said I understood. I went on about my business." *Id.* Mr. Feltner was then asked in his deposition whether he had said anything else to Ms. Peters, and he replied, "Not that I recall." *Id.*

After his termination, Mr. Feltner filed a complaint with the EEOC charging sexual harassment. On July 6, 1993 he filed a complaint in this court alleging violations of Title VII, 42 U.S.C. § 2000e *et seq.* Mr. Feltner alleges that he was sexually harassed at Wabash National, through both hostile environment and *quid pro quo* sexual harassment. He also alleges that the real reason for his termination was retaliation for his complaints. The defendant has filed a motion for summary judgment which is the subject of this memorandum and order.

### SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); [1] and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings. *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991), *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir. 1994). Neither may the nonmoving party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).

During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–255, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was recently re-examined in *Eastman Kodak v. Image Technical Services,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

This court is also very aware of Judge Rovner's recent authoritative opinion in *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446 (7th Cir.1994), which adeptly covers the relevant standards for summary judgment in a Title VII sexual harassment case.

## DISCUSSION

Plaintiff Feltner claims violations of Title VII in the form of *quid pro quo* and hostile environment sexual harassment and retaliatory discharge due to his complaints. The court has determined preliminarily that Mr. Feltner's complaint must be dismissed for two reasons: he lied on his résumé, and same-sex sexual harassment is not actionable under Title VII. Notwithstanding, the court has determined that Mr. Feltner has not alleged facts sufficient to withstand the defendant's motion for summary judgment on the merits.

### A. Application Falsehood

As an initial matter, the defendant states that during discovery in this case it learned that Mr. Feltner provided false information on his employment application. Wabash states that if it had discovered this during Mr. Feltner's brief employment, it would have terminated him. The defendant therefore contends that according to *Washington v. Lake County, Illinois,* 969 F.2d 250 (7th Cir.1992), summary judgment should be entered in the defendant's favor. This court agrees.

---

1. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33

(D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

In *Washington v. Lake County* the plaintiff, an African–American, sued his former employer, the Lake County Sheriff's Department, for racial discrimination under Title VII and 42 U.S.C. §§ 1981 and 1983. The court held that since the defendant would have fired the plaintiff upon discovery of the misrepresentation, the plaintiff could not recover on an employment discrimination claim. *Washington*, 969 F.2d at 256–57. The plaintiff had denied any criminal convictions, which was a lie. The defendant submitted an affidavit from the Sheriff and one from the Jail Superintendent stating that Mr. Washington would have been discharged if the employer had learned the truth. *Id.* at 256. The affidavits were "essentially uncontradicted." *Id.* There was no evidence of a departmental policy to fire employees who lied on their applications (*id.* at 257) nor was there any evidence that the department had ever fired anyone for lying on his or her application form (*id.* at 252). The only evidence was the "essentially uncontradicted" affidavits of two high-level employees familiar with the hiring and firing practices (but who were not, by the way, the ultimate decisionmakers in such situations). *Id.* at 256–57. The Seventh Circuit held that the plaintiff could not recover on an employment discrimination claim, and summary judgment was appropriate for the defendant.

In the case now before this court, Mr. Feltner filled out an application for employment at Wabash National. The defendant has submitted that application to the court. *See* Defendant's Brief, Exhibit 34, "Employment Application." Despite the plaintiff's contention to the contrary, the application is a relatively extensive one. It consists of two pages of questions, including sections on personal data, education, military service, employment history (the largest section), and "general." At the bottom of the employment history section is the question "Have you ever been discharged or forced to resign from any position? (If yes, give details including name of employer.)" *Id.* Mr. Feltner marked "No." *Id.* Directly below that is the company's statement that false or misleading information may be cause for dismissal if discovered at a later date. *Id.* The application was signed by Mr. Feltner.

During the plaintiff's deposition the following exchange took place:

Q. Have you ever been terminated from any job other than, aside from Wabash National?

A. I was terminated one time, it was a part-time job for Purolator Courier.

Feltner Dep. at 24. The termination was in 1987 or 1988. *Id.* The plaintiff attempts to clean up this problem by submitting an affidavit stating: "The termination was not involuntarily forced upon me, as I was given a choice: either perform tasks [which he claims were impossible] or leave ... I elected to leave." Feltner Affidavit of April 22, 1994 (ellipses in original). The plaintiff says that he was ordered to do an impossible task or leave—he could not do the task so he left. He had no choice. Whatever spin the plaintiff's counsel puts on it, Mr. Feltner was given an ultimatum and forced to resign because he would not (he says he could not) do the work his employer required.

At any rate, the issue really is whether Mr. Feltner thought it was a termination as opposed to a resignation. Mr. Feltner was asked cold, in his deposition, and he volunteered without any leading that in addition to Wabash, he was terminated by Purolator Courier. *See* Feltner Dep. at 24. He clearly differentiates that from his leaving his other past jobs. Mr. Feltner can not raise a material issue of fact by submitting a contradictory, self-serving affidavit.

The plaintiff cites *Reed v. AMAX Coal*, 971 F.2d 1295 (7th Cir.1992) for his contention that the defendant has not proven that it would have fired him if it had discovered the falsehood. In *Reed*, the district court granted summary judgment in a Title VII racial discrimination case because the plaintiff had lied on his employment application. *Id.* at 1298. The Seventh Circuit affirmed the summary judgment, but stated that summary judgment should not have been based on the falsehood because the employer had not demonstrated that it would have fired the plaintiff if it had discovered the falsehood. *Id.* Rather, summary judgment should have been entered on the merits. *Id.* at 1299.

The *Reed* court stated that a grant of summary judgment on these grounds requires "proof that the employer would have fired the employee, not simply that it could have fired him." *Id.* at 1298. However, this was also the standard used in *Washington v. Lake County*, 969 F.2d 250, in which the Seventh Circuit held that the defendant had proven that it would have fired the plaintiff. As cited earlier, the only evidence in *Washington* was two "essentially uncontradicted" affidavits. *Id.* at 256. *Reed v. AMAX Coal* is unfortunately not helpful to the plaintiff for three reasons: it does not state what, if any, evidence was put forth by the defendant in support of its contention; it was decided prior to *Washington* (June 4, 1992 versus July 10, 1992) and therefore does not refer to or explain *Washington;* and there is stronger evidence in the present case that the defendant would have fired the plaintiff than existed in either *Washington* or *Reed.*

If there was *any* evidence put forth in *Reed v. AMAX Coal* by the defendant, it was apparently just that the employment application stated that falsifications were grounds for dismissal. 971 F.2d at 1298. *Reed* seems to stand only for the proposition that lying on an application (or résumé) does not automatically entitle an employer to summary judgment—the employer must put forth evidence that it *would* have terminated the employer. It may also stand for the proposition that a statement on the application that falsification is grounds for discharge, standing alone, does not provide sufficient evidence that the employer *would* have discharged the plaintiff.

■ In the case now before this court, however, there is sufficient uncontradicted evidence that the defendant would have fired the plaintiff, and the defendant is therefore entitled to summary judgment. The first evidence is the application itself, which states that falsification is grounds for discharge. Standing alone, that would not be sufficient. *See Reed,* 971 F.2d at 1298. Further evidence is the statement in the Employee Handbook (which Mr. Feltner acknowledges he received at orientation) that "Certain serious acts such as ... falsification of information ... cannot be tolerated and subjects the employee to immediate discharge." Defendant's Brief, Exhibit 10, Attachment B. In addition, and most importantly, the defendant has submitted an affidavit by Chuck Fish, Director of Personnel for Wabash National Corporation, which states unequivocally that if Wabash learns after an employee is hired that the employee falsified information on the employment application, the employee is immediately terminated. Fish Affidavit at ¶ 9. He states specifically that if Wabash learns that an employee has lied about being terminated from another job, the employee is terminated immediately. *Id.* Mr. Fish states that there have been incidents where Wabash National has learned of falsified information on an application, and "[i]n each instance, the employee who falsified the information was terminated immediately." *Id.* at ¶ 10. Mr. Fish states in his affidavit that if Wabash had learned of Mr. Feltner's falsehood, he would have been terminated immediately. *Id.* at ¶ 11. Wabash National says that its concern is not really over the fact that Mr. Feltner was terminated, but that he lied about it. Mr. Fish, unlike the affiants in *Washington v. Lake County*, 969 F.2d at 256–57, was actually a personnel decisionmaker.

The plaintiff has not contradicted this evidence, other than the plaintiff's affidavit which states that he never knew anyone who was fired for falsifying information. Of course, he does *not* say he knew someone who was discovered to have lied and was *not* terminated. Mr. Fish has been head of Personnel for nine years, and his affidavit is more than "essentially" uncontradicted. Under both *Washington v. Lake County* and *Reed v. AMAX Coal*, the defendant is entitled to summary judgment.

An interesting point that neither side raises, and apparently has never been addressed by the court of appeals, is whether summary judgment in a case such as this is appropriate on all claims or solely on claims of unlawful discharge. Since the plaintiff could bring a sexual harassment claim even if he had not been discharged, this court feels that only discharge-related claims are appropriate for summary judgment on this ground. It could certainly be argued the other way as well.

In an admittedly cursory search, the court has discovered no case on point, but has found two cases in which courts have granted summary judgment on all claims, even garden variety sexual harassment, in light of after-acquired knowledge of résumé or application fraud. In *Churchman v. Pinkerton's, Inc.,* 756 F.Supp. 515 (D.Kan.1991), the court dismissed the plaintiff's sexual harassment claim because of application fraud. In that case, the plaintiff had quit, but then sued for sexual harassment for incidents that had occurred and for constructive discharge. Likewise, in *Mathis v. Boeing Military Airplane Co.,* 719 F.Supp. 991 (D.Kan.1989), the plaintiff alleged ongoing sexual harassment and retaliatory discharge, but the court held that her application falsehoods prevented *any* relief under Title VII.

This is certainly an open question, as the circuits do not even generally agree on the applicability of summary judgment on this issue in these cases. However, this court need not decide the question in light of the other reasons, *infra,* compelling summary judgment on all claims. At the very least, Mr. Feltner's application falsehood entitles this defendant to summary judgment as to the retaliatory discharge claim.

### B. Same–Sex Harassment Under Title VII

The court has determined that Mr. Feltner's claims must be dismissed for a reason argued earlier by the plaintiff in a motion to dismiss. In light of the fully briefed Rule 56 motion, the court has determined that the harassment complained of is not covered by Title VII.

Mr. Feltner alleges only that he was harassed by another man. This court has gone through the plaintiff's submission of evidence page by page and line by line. In particular, Mr. Feltner complained to Wabash National only that he was harassed by a coordinator (a crew or team leader) named Tremain Gall, who aimed the comments "drop down," "dick sucker," and "crawl under the table" at Mr. Feltner. Feltner Dep. at 72, 75. Mr. Gall made a comment wondering whether Mr. Feltner could perform fellatio without his false teeth. *Id.* at 59, 64, 77, 57, 75 Mr. Gall

also asked Mr. Feltner if he would go with him to a gay bar. *Id.* at 74. Those were the only comments Mr. Feltner ever complained about, because "those were the only problems that really stuck out." *Id.* Mr. Feltner testified that it was the only time he felt sexually harassed at Wabash. *Id.; see also* 78, 80–81.

■ Same-sex harassment is not actionable under Title VII. *See Ulane v. Eastern Airlines,* 742 F.2d 1081 (7th Cir.1984), *cert. den.,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Goluszek v. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill.1988); *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994) ("[h]arassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination."); *Dillon v. Frank,* 58 Fair Emp.Prac.Cas. (BNA) 90, 1990 WL 358586 (E.D.Mich.1990), *aff'd,* 952 F.2d 403 (6th Cir.1992) (Table; Text in Westlaw).

■ The evidence shows only that Mr. Feltner was harassed by Mr. Gall. There is no evidence that Mr. Feltner was harassed *because* he was a male. This court agrees with the *Goluszek* analysis that Title VII is aimed at a gender-biased atmosphere; an atmosphere of oppression by a "dominant" gender. *See Goluszek v. Smith,* 697 F.Supp. at 1456. The evidence put forth by the plaintiffs, and dealt with in the Lisa Vandeventer Order of October 12, 1994, show that this was not an "anti-male" atmosphere. In fact, in light of the record, the contention is ridiculous. Mr. Feltner was "razzed" in a way designed to be the most annoying to him personally—he was called a homosexual. It worked; Mr. Feltner was annoyed. Mr. Gall found Mr. Feltner's hot button, and pushed it. The record does not support a reasonable inference that Mr. Gall "harassed" Mr. Feltner *because* he was a man. This was not actionable sexual harassment.[2]

### C. Retaliatory Discharge

■ In light of this court's determination that Mr. Feltner's claims must be dismissed,

---

2. If Mr. Feltner was in fear for his safety, he has state law remedies available. *See Dillon v.*

*Frank,* 1992 WL 5436 at **8 (unpublished; text in Westlaw).

the court will give only a summary account of its reasoning regarding the plaintiff's substantive issues. For the same reasons given in this court's order of October 12, 1994 (dismissing plaintiff Lisa Vandeventer's retaliatory discharge claim), Mr. Feltner's retaliatory discharge claim must be dismissed. The legal arguments were amply expressed in that 28 page order, and the court need not repeat them. Mr. Feltner has not stated a prima facie case, as he has not produced any evidence of a link between his complaints and the decision to terminate him.[3] The complaints were handled in Mr. Feltner's department by his supervisor, and the termination was solely between the company nurse (to whom Mr. Feltner never complained) and the Personnel Director, Ms. Rhonda Peters. There has been no evidence of any link.

■ Furthermore, as was true of Lisa Vandeventer's claim, the defendant has put forth a legitimate, non-discriminatory reason for Mr. Feltner's termination which the plaintiff has failed to show was pretextual. Ms. Peters, who terminated Mr. Feltner, states that she did so solely because he violated the leave of absence policy. Mr. Feltner admits he did so. *See supra*, page 792. The court notes that Wabash's policy seems unduly harsh, but it is consistent. Furthermore and more importantly, the proffered reason is not pretextual simply because it is poorly founded or unfair. *Reed v. AMAX Coal*, 971 F.2d at 1300.

The plaintiff has not stated a prima facie case, and in any event the defendant has proffered a legitimate, non-discriminatory reason for its action. The plaintiff has put forth no evidence that the reason proffered was pretextual. Therefore, summary judgment is appropriate for the defendant.

D. *Quid Pro Quo* Sexual Harassment

Mr. Feltner also alleges *quid pro quo* sexual harassment under Title VII. However, there have been no factual allegations in support of this claim, and the defendant's motion for summary judgment as to it must be granted.

■ The plaintiff misapprehends the legal meaning of *quid pro quo* sexual harassment. *Black's Legal Dictionary* defines *quid pro quo* as latin for "something for something." The *American Heritage Dictionary* states that it means "an equal exchange or substitution." When used to describe sexual harassment, *quid pro quo* means that an employer, or someone of higher rank, requires an employee to submit to sexual conduct in return for increased employment benefits or under threat of adverse employment repercussions.

■ The seminal case in the Seventh Circuit is *Dockter v. Rudolf Wolff Futures, Inc.*, 913 F.2d 456 (7th Cir.1990), which defined *quid pro quo* sexual harassment as "situations in which *submission* to sexual demands is made a condition of tangible employment benefits." *Id.* at 461 (emphasis added) (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1423 (10th Cir.1987)); *see also* 29 C.F.R. § 1604.11(a). Employers engage in *quid pro quo* sexual harassment when they condition employment benefits on the granting of sexual favors or on submission to sexual advances. *Piech v. Arthur Andersen & Co.*, 841 F.Supp. 825, 830 n. 5 (N.D.Ill. 1994); *see also Spencer v. General Electric Co.*, 706 F.Supp. 1234, 1237 (E.D.Va.1989), *aff'd* 894 F.2d 651 (4th Cir.1990). There is no *quid pro quo* harassment when no one at the place of business links economic benefits to the plaintiff's participation in sexual conduct. *See Dey v. Colt Construction*, 28 F.3d at 1453.

■ Mr. Feltner has made no factual allegations which fall within the definition of *quid pro quo* sexual harassment. He seems to confuse *quid pro quo* with hostile environment and retaliation; he believes that he was fired for his complaints, and therefore has suffered adverse employment effects for "refusing" to accept the harassment. Additionally, he believes that the hostile environment had the effect of disrupting his ability to do his work properly. These are claims under

---

**3.** Indeed, he may not have satisfied the first prong of the prima facie test, as his complaints were not protected by Title VII. *See supra*. However, he apparently believed that they were, possibly reasonably, and that may satisfy the first prong. *See Dey v. Colt Construction*, 28 F.3d 1446, 1457 (7th Cir.1994).

retaliation or hostile environment; these problems are *not quid pro quo* harassment. He does not allege, for example, that a supervisor asked him to have sexual relations with him or else he would be given poor work assignments, denied benefits, or be fired. The only detriment allegedly suffered by Mr. Feltner was termination and possibly (although unsupported by the record) decreased productivity due to the hostile environment.

He does not allege that he was fired for decreased productivity, or suffered any other harm from such. He does not allege that he was fired because he failed to perform sexually. He alleges he was fired in retaliation for lodging complaints. *Quid pro quo* means that benefits were denied (or threatened) or adverse action was taken towards him by someone else; it does not include one's own lessened productivity due to the aggravation or distraction of the hostile environment. At worst, Mr. Feltner has alleged that he suffered a hostile environment with derogatory sexual remarks and when he complained he was fired. Those concerns are covered by his other two claims, and do not comprise *quid pro quo* harassment.

The defendant's motion for summary judgment is granted as to Mr. Feltner's claim of *quid pro quo* sexual harassment.

### E. Hostile Work Environment

■ Again, the court has addressed the legal arguments of this substantive issue in its memorandum and order of October 12, 1994. There is no need to reprint the legal standards surrounding this issue, especially in light of the court's determination that Mr. Feltner's claims must be dismissed in any event.

■ Mr. Feltner alleges only that he was harassed by another man. This court has gone through the plaintiff's submission of evidence page by page and line by line. In particular, Mr. Feltner complained to Wabash National only that he was harassed by a coordinator (a crew or team leader) named Tremain Gall, who aimed the comments "drop down," "dick sucker," and "crawl under the table" at Mr. Feltner. Feltner Dep. at 72, 75. Mr. Gall made a comment wonder-

ing whether Mr. Feltner could perform fellatio without his false teeth. *Id.* at 59, 64, 77, 57, 75 Mr. Gall also asked Mr. Feltner if he would go to a gay bar. *Id.* at 74. Those were the only comments Mr. Feltner ever complained about, because "those were the only problems that really stuck out." *Id.* Mr. Feltner testified that it was the only time he felt sexually harassed at Wabash. *Id.; see also* 78, 80–81. To state a hostile environment claim, the plaintiff's *subjective* view must support an inference of harassment. *See Dey v. Colt Construction,* 28 F.3d at 1454.

In Mr. Feltner's "affidavit" of April 19, 1994, he makes some utterly general allegations of a hostile work environment. One problem with Mr. Feltner's affidavit is that it lacks any specificity. The other problem is that apparently it is not really Mr. Feltner's affidavit. This court would not make such a determination if the only evidence was that the affidavit is clearly written in Mr. Feltner's attorney's (Mr. Crawford's) unique writing style. However, it is patently obvious that the "affidavit" sworn to by Mr. Feltner in fact relates to Ms. Vandeventer, not Mr. Feltner. He "swears" to the incident when Ms. Vandeventer met with her supervisor and signed a document to that effect, which she later recanted, as if it was his experience. Feltner Affidavit at ¶ 11. This paragraph, indeed the *entire affidavit* other than the name printed at the top, is merely an exact copy of Ms. Vandeventer's affidavit. Mr. Feltner swears to things which did not happen to him, and this calls into serious doubt the probative value of his and the other affidavits prepared by his attorneys. At the very least, this court is completely justified in disregarding the plaintiff's affidavit. The court is not pleased by this.

Even if the court turned a blind eye and accepted the affidavit as truthful, it would change nothing. The plaintiff can not create a material issue of fact by submitting a contradictory, self-serving affidavit. He certainly can not create a material issue by trying to contradict specific, repeated sworn deposition testimony with a general and vague affidavit. When the court takes into further consider-

ation the patent fact that the plaintiff is either lying or never even read his affidavit, there is no issue here.

Mr. Feltner's problems were with Mr. Gall. They were relatively isolated incidents, and therefore do not rise to the level required by hostile environment case law.[4] In any event, they were not incidents actionable under Title VII.

## CONCLUSION

In light of the foregoing discussion, the plaintiff's claims (all under Title VII) must be dismissed. The defendant's motion for summary judgment as to Mr. Feltner's claims is hereby **GRANTED**

**SO ORDERED.**

4. Mr. Gall was disciplined by the supervisor after Mr. Feltner's sole complaint. He was put on a 60–day probation and almost fired. However, Mr. Feltner alleges rather vaguely that the harassment did not cease after that. He does not, however, allege that he told anyone this.