**Ilene K. KING**

v.

**M.R. BROWN, INC. t/a Ruth's Chris Steak House.**

No. 95–2271.

United States District Court, E.D. Pennsylvania.

Sept. 22, 1995.

---

162

Adam H. Feinstein, Philadelphia, PA, for plaintiff.

Joan R. Sheak, Klehr, Harrison, Harvey, Branzburg and Ellers, Allentown, PA, for defendant.

### *MEMORANDUM*

NEWCOMER, District Judge.

Presently before this Court are defendant's Motion to Dismiss Counts I, III, and IV of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) or 12(b)(6) and to Strike Certain Paragraphs of that Complaint, and plaintiff's response thereto. For the reasons that follow, this Court shall grant the motion in part and deny the motion in part.

### I. *Background*

Plaintiff Ilene King filed this sexual harassment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, against her former employer, Ruth's Chris Steak House ("Ruth's Chris"). Plaintiff also asserts a state law claim for breach of contract against Ruth's Chris.

In her Second Amended Complaint, plaintiff makes the following allegations. Plaintiff was employed as a waitress at defendant Ruth's Chris Steak House, an upscale restaurant located in Philadelphia, Pennsylvania, from September 1989 until Ruth's Chris dismissed her in June 1994. From March 1994 until her termination, plaintiff was subjected to unwelcome sexual overtures and harassment by Karen Leader, a female co-worker. Ms. Leader, who is a lesbian, harassed plaintiff by engaging in acts of "undesired and nonconsensual physical touching as well as verbal abuse and intimidation." Second Am. Compl. ¶ 10. Plaintiff then notified defendant's owner of the alleged harassment. The owner assigned the investigation of this matter to the restaurant's general manager, Curt Gaither.

The events that transpired subsequently are not entirely clear from the Second Amended Complaint. It appears that Mr. Gaither called a meeting between plaintiff and Ms. Leader that resulted in management issuing written warnings to both Ms. Leader and plaintiff that sexual harassment violates company policy and would not be tolerated. It is unclear why plaintiff received a warning since there is nothing in the record to indicate that she committed acts of sexual harassment, only that she was a victim of it. After receiving the written warning, plaintiff informed Mr. Gaither that she believed that the company had issued a warning to her as retribution against her for raising her claim of sexual harassment. Plaintiff also telephoned Charles DiLapi, the Vice President for Human Resources of Ruth's Chris' parent corporation, to notify him of the harassment.

Five days after the first meeting, Mr. Gaither again summoned plaintiff to his office. During this time period, plaintiff had

skipped two scheduled shifts at work, claiming that she felt that Ms. Leader posed a physical danger to her. As a result of plaintiff's absences, the company gave her a written reprimand and suspended her for two weeks. Mr. Gaither stated that, based on the opinion of another Ruth's Chris employee, David McSherry, whose role in this matter is somewhat nebulous, he did not believe that plaintiff was in any physical danger from Ms. Leader.

On May 31, 1994, while suspended from work, plaintiff filed a Charge of Discrimination with the EEOC and the Pennsylvania Human Rights Commission ("PHRC"). Compl.Ex. D. The Charge was limited to a description of Ms. Leader's harassment of plaintiff and a claim for retaliatory suspension. Subsequently, on June 8, 1994, Mr. Gaither provided plaintiff with a written notice of termination, which stated that the termination was "a result of warning and suspension of [sic] confrontation with Karen Leader." Compl.Ex. E. On June 17, 1994, plaintiff filed a second Charge of Discrimination with the EEOC and PHRC alleging retaliatory discharge.

Plaintiff then filed the present action in this Court. In Count I, plaintiff alleges discriminatory discharge in violation of Title VII. In Count II, plaintiff alleges retaliatory discharge in violation of Title VII. In Count III, plaintiff alleges discriminatory employment practices pursuant to the PHRA. In Count IV, plaintiff seeks damages for breach of contract. Defendant now moves to dismiss Counts I, III and IV of plaintiff's Second Amended Complaint and to strike paragraphs 12(e) and (f) of that complaint.

## II. Legal Standard for Motion to Dismiss

Pursuant to Fed.R.Civ.P. 12(b)(6), a court should dismiss a claim for failure to state a cause of action only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Because granting such a motion results in a determination on the merits at such an early stage of a plaintiff's case, the district court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 664–65 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989)).

## III. Discussion

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant moves this Court to dismiss portions of plaintiff's sexual harassment claim for lack of subject matter jurisdiction. This Court will grant defendant's request in part and deny the request in part.

Under Title VII, a plaintiff must file charges with the EEOC and receive a right to sue letter before filing a complaint in federal court. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Company,* 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). The purpose of this requirement is to "correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." *Ostapowicz,* 541 F.2d at 398. In order to ensure that the EEOC has the first opportunity to address the allegations of discrimination, a district court may adjudicate only those claims that fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 398–399 (quoting *Gamble v. Birmingham Southern R.R. Co.,* 514 F.2d 678 (5th Cir.1975)).

In this case, the Second Amended Complaint includes various allegations of sexual harassment that occurred during plaintiff's employment at Ruth's Chris. As described *infra,* plaintiff alleges in paragraph 10 that she was the victim of sexual harassment by Karen Leader that created a hostile work environment at Ruth's Chris. Plaintiff properly raised this claim with the EEOC and PHRA. As such, this Court may exer-

cise subject matter jurisdiction over this claim.

Not previously raised with the EEOC and PHRA, however, are plaintiff's remaining allegations of harassment, which are contained in paragraphs 11–16 of the Second Amended Complaint. These allegations, which are described in greater detail below, allege harassment by individuals other than Ms. Leader as well as different forms of harassment, including instances of *quid pro quo* sexual harassment.[1] Defendant maintains that this Court may not adjudicate these claims because they were not included in plaintiff's EEOC Charge of Discrimination. Because this Court agrees in part, it will dismiss those claims raised in paragraphs 14–16 for lack of subject matter jurisdiction. The claims raised in paragraphs 11–13, however, are valid. A summary of the specific averments follows.

In paragraphs 11 and 12, plaintiff alleges that employees other than Ms. Leader created a hostile work environment by making lewd comments about the anatomy of female customers, hanging a sexually suggestive poster in the restaurant's kitchen, and permitting the posting of explicit hand-drawn pictures on the employee bulletin board.

In paragraph 13, plaintiff contends that defendant "created a hostile work environment by engaging in *quid pro quo* sexual harassment of female members of the employer's waitstaff other than plaintiff." In support of this allegation, plaintiff avers that defendant's former general manager, Quinn Brennan, engaged in sexual relations with female employees and that he made sexually provocative comments to female employees.[2]

In paragraphs 14 and 15, plaintiff states that she personally was subjected to *quid pro quo* sexual harassment by male managerial staff. She claims that Brennan confessed to having sexually explicit dreams about her, stared at her, and made comments about her physical appearance. She also alleges that Brennan became jealous after plaintiff paid attention to a "high roller" customer and that he retaliated by reducing the number of tables she was permitted to service. Plaintiff further claims that she was repeatedly physically touched on the derriere by the restaurant's maitre'd, and that the maitre'd once followed her into the ladies' room to express his physical attraction to her and his desire to initiate a sexual relationship with her.

Finally, in paragraph 16, plaintiff alleges that Brennan met with two male members of the restaurant's waitstaff "to discuss ways in which they could conspire to remove Plaintiff and another female member of the employer's waitstaff, Debbie Donato, because these female employees had the audacity to earn the same level of gratuities which these male employees were able to command."

As previously stated, defendant maintains that this Court should dismiss the allegations contained in paragraphs 11–16 for lack of subject matter jurisdiction because they neither were raised in the EEOC charge nor fell within the scope of the EEOC's investigation of plaintiff's charges. The recent opinion of *West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir.1995), governs resolution of this issue. In *West*, a racial harassment case, the district court excluded at trial evidence of specific incidences of racial harassment of both plaintiff and other black employees that were not included in the plaintiff's EEOC charge. The district court reasoned that, unless the

---

1. The Supreme Court has held that Title VII's ban against sex discrimination encompasses two distinct forms of sexual harassment: (1) *"quid pro quo"* harassment, in which the sexual conduct is linked to the grant or denial of an economic quid pro quo, and (2) "hostile work environment" harassment, in which the harassing conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); 29 CFR § 1604.11(a)(3). Actionable sexual harassment occurs not only when the alleged harasser is the supervisor of an employee, but also if an employer tolerates harassment by an employee's co-worker. *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990).

2. Although the Second Amended Complaint refers to the acts alleged in paragraph 13 as *quid pro quo* sexual harassment of other employees, these allegations appear to be more consistent with the Supreme Court's definition of hostile work environment harassment than *quid pro quo* harassment.

evidence involved the same actor or the same specific form of discriminatory conduct, plaintiff failed to meet the jurisdictional requirements of Title VII as to the newly added claims.

The Third Circuit reversed, holding that district courts should apply a "totality of the circumstances" standard to ascertain whether specific instances of harassment are relevant to prove the existence of a hostile work environment. The Third Circuit specifically rejected the district court's use of the "same actor, same conduct" test, stating that "[b]ecause a hostile work environment claim is a single cause of action, rather than a sum of discrete claims, each to be judged independently, the focus is the work atmosphere as a whole." *Id.* at 756. The court reasoned that

[i]f an employer knowingly (actively or constructively) permits a hostile work environment to exist, it is of no import that the collection of incidents comprising the claim were committed by a variety of individuals. Rather, by implicitly condoning harassing behavior, the employer may facilitate its spread by a greater number of employees.

*Id.* (footnote omitted). The court added that "[i]n some instances, evidence of harassment of others will support a finding of discriminatory intent with regard to a later incident." *Id.* at 757.

Although the narrow issue in *West* was the admissibility of evidence at trial rather than Title VII's requirement of exhaustion of administrative remedies, the Third Circuit's pronouncement on the scope of a hostile work environment claim is relevant to the case at bar. Since a hostile work environment claim is a "single cause of action," *Id.* at 756, *West* dictates that a jury be permitted to evaluate instances of impermissible harassment **in the aggregate** in order to ascertain whether the incidents **collectively** created a hostile work environment. In this case, plaintiff's "new" allegations of a hostile work environment at Ruth's Chris merely buttress her original claim of hostile work environment, which she properly raised with the

EEOC and of which Ruth's Chris was clearly on notice. Because plaintiff may offer evidence of these "new" allegations at trial without stating a new cause of action, it would make little sense to require her to file a separate Charge of Discrimination with the EEOC based on these allegations. Thus, plaintiff's averments of paragraphs 11–13, which allege facts supporting her claim of a hostile work environment, are properly before this Court.

On the other hand, paragraphs 14–16, which allege *quid pro quo* harassment of plaintiff, are not properly part of the instant action. These allegations, which state a different cause of action not previously raised with the EEOC, are neither related to plaintiff's charge of a hostile work environment nor likely to have been included in the EEOC's investigation of plaintiff's charge. To hold otherwise would frustrate Title VII's preference for investigation and conciliation by the EEOC over formal adjudication, as well as deprive the charged party of notice of the allegations against it. *See EEOC v. E.I. duPont de Nemours & Co.*, 516 F.2d 1297 (3d Cir.1975).

### B. Counts I and III: Same–Gender Sexual Harassment

■ Defendant next contends that sexual harassment is not actionable pursuant to Title VII or the PHRA when the alleged harasser and the victim are members of the same gender.[3] This is an issue of first impression in the Third Circuit. This Court finds that same-sex sexual harassment is actionable under Title VII.

Title VII of the Civil Rights Act of 1964 renders it illegal for an employer

"to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, **because of** such individual's race, color, religion, **sex,** or national origin."

42 U.S.C. § 2000e–2(a)(1) (emphasis added). The EEOC and federal courts have inter-

---

**3.** Because the PHRA has been interpreted and applied identically to Title VII, the following analysis applies equally to plaintiff's Title VII claim stated in Count I and her PHRA claim

stated in Count III. *Allegheny Housing Rehabilitation Corp. v. Commonwealth of Pennsylvania,* 516 Pa. 124, 532 A.2d 315 (1987).

preted this language to proscribe harassment based on the factors listed in the statute. *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2404.

The courts that have ruled on the actionability of same-gender harassment have reached divergent results. It appears, however, that the trend is to permit such claims to proceed.

On the one hand, the courts that have found same-sex sexual harassment to be actionable have relied on the Supreme Court's recognition in *Vinson* that "when a supervisor harasses a subordinate because of the subordinate's sex, that supervisor 'discriminates' on the basis of sex." 477 U.S. at 64, 106 S.Ct. at 2404. *See EEOC v. Walden Book Co., Inc.,* 885 F.Supp. 1100 (M.D.Tenn. 1995); *McCoy v. Johnson Controls World Services, Inc.,* 878 F.Supp. 229 (S.D.Ga.1995); *Prescott v. Independent Life and Acc. Ins. Co.,* 878 F.Supp. 1545 (M.D.Ala.1995); *Marrero–Rivera v. Dept. of Justice,* 800 F.Supp. 1024 (D.P.R.1992), *aff'd,* 36 F.3d 1089 (1st Cir.1994); *Parrish v. Washington National Insurance Co.,* 1990 WL 165611 (N.D.Ill. 1990); *Joyner v. AAA Cooper Transp.,* 597 F.Supp. 537 (M.D.Ala.1983), *aff'd,* 749 F.2d 732 (11th Cir.1984); *Wright v. Methodist Youth Services,* 511 F.Supp. 307 (N.D.Ill. 1981). In effect, these courts have concluded that, if the plaintiff had been a member of the opposite sex, he or she would not have been harassed. *See also Barnes v. Costle,* 561 F.2d 983, 990 n. 55 (D.C.Cir.1977).

On the other side of the debate are several courts that have found that no cause of action exists for same-gender harassment. *See Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994); *Benekritis v. Johnson,* 882 F.Supp. 521 (D.S.C.1995); *Fox v. Sierra Development Co.,* 876 F.Supp. 1169 (D.Nev.1995); *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822 (D.Md.1994); *Vandeventer v. Wabash National Corp.,* 867

F.Supp. 790, 796 (N.D.Ind.1994); *Goluszek v. Smith,* 697 F.Supp. 1452 (N.D.Ill.1988). These courts have reasoned that Congress' only purpose in enacting Title VII was to foster equal employment opportunity and that this purpose is not furthered by protecting employees from harassment by other members of the same gender.

This Court respectfully declines to follow the reasoning of *Goluszek* and its progeny that the only sex discrimination Title VII endeavors to prevent is that "stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group." *Goluszek,* 697 F.Supp. at 1456 (citing Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII,* 97 Harv.L.Rev. 1449, 1451–52 (1984)). First, the cognizability of reverse discrimination claims under Title VII belies this conclusion; as the *Walden Book Co.* court aptly noted, it is "untenable to allow reverse discrimination cases but not same-sex sexual harassment cases to proceed under Title VII." 885 F.Supp. at 1103. *Accord Prescott,* 878 F.Supp. at 1550. Second, nothing in the text of the statute indicates that Title VII's protections extend only to individuals who are harassed by members of the opposite sex. Third, as no legislative history exists on this issue,[4] this Court fails to understand how the *Goluszek* court was able to reach its conclusion. Finally, *Goluszek*'s conclusion is further weakened by the Supreme Court's implicit acknowledgement that both men and women can be victims of sexual harassment:

> Surely, a requirement that a *man or* woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.

---

4. The Supreme Court has acknowledged the dearth of legislative history pertaining to Title VII's ban against sex discrimination:

The prohibition against discrimination based on sex was added to Title VII at the last minute on the floor of the House of Representatives. 110 Cong.Rec. 2577–2584 (1964). The principal argument in opposition to the amendment was that "sex discrimination" was sufficiently

different from other types of discrimination that it ought to receive separate legislative treatment. This argument was quickly defeated, the bill quickly passed as amended, and we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on "sex."

*Vinson,* 477 U.S. at 63–64, 106 S.Ct. at 2404 (citation omitted).

*Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir.1982) (quoted with approval in *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405) (emphasis added). *See also Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295, 302 (1993) ("A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers"). Therefore, this Court concludes that same-gender sexual harassment is actionable.

### C. Count IV: Breach of Contract

Defendant next argues for dismissal of Count IV, which states a claim for breach of contract. The essence of plaintiff's claim is that, by providing her with a copy of its written prohibition against sexual harassment, defendant granted plaintiff a contractual right to be free from sexual harassment. In response, defendant makes two arguments. First, defendant contends that defendant's personnel policies and procedures do not create contractual obligations. Second, defendant argues that the PHRA preempts any claim for breach of contract.

### 1. Creation of Contractual Obligations

This Court rejects defendant's argument that defendant's personnel policies and procedures do not create contractual obligations. Under Pennsylvania law, a written embodiment of personnel policies and procedures may become part of an employment contract if the employer offered the policy as a binding term of employment. *Morosetti v. Louisiana Land and Exploration Co.,* 522 Pa. 492, 564 A.2d 151 (1989). What is required is that the policy be offered as "an inducement to employment." *Gruver v. Ezon Products, Inc.,* 763 F.Supp. 772, 774 (M.D.Pa.1991).

Here, plaintiff alleges in her Second Amended Complaint that defendant gave her materials guaranteeing a harassment-free workplace and Open Door Policy as a specific inducement offered to convince her to continue in defendant's employ. Second Am. Compl. ¶ 61. Accepting this allegation as true for purposes of the present motion to dismiss, this Court is not permitted to make the factual determination as to whether the materials provided to plaintiff formed part of a contract.

### 2. PHRA Preemption of State Law Claims

The PHRA preempts parties from bringing common law claims for wrongful discharge based on claims of discrimination. *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 918 (1989); 43 P.S. § 962(b). The PHRA also preempts common law claims for breach of contract when the only act that would support the common law claim is the act of discrimination. *DiFlorio v. Nabisco Biscuit Co.,* 1995 WL 355580 at *2 (June 9, 1995) (citing *Keck v. Commercial Union Ins. Co.,* 758 F.Supp. 1034 (M.D.Pa.1991)); *Brennan v. National Telephone Directory Corp.,* 850 F.Supp. 331, 345 (E.D.Pa.1994); *Schweitzer v. Rockwell Int'l,* 402 Pa.Super. 34, 586 A.2d 383 (1990). *See also Sola v. Lafayette College,* 804 F.2d 40, 43 (3d Cir.1986) (noting that the PHRA preempts state law claims alleging discriminatory conduct, Third Circuit addressed but did not decide whether PHRA preempted plaintiff's claim for breach of express contract). Here, plaintiff's only allegation is that she "was subjected to unlawful sexual harassment by a fellow Ruth's Chris employee which the Defendant failed and refused to remedy and, in fact, condoned misfeasance in responding to the Plaintiff's plea for help." Second Am.Compl. ¶ 62. Since it is impossible for plaintiff to succeed on her breach of contract claim without succeeding on her claim of discrimination, her breach of contract claim is preempted by the PHRA.

### D. Motion to Strike Paragraphs 12(e) and (f)

Finally, defendant moves to strike paragraphs 12(e) and 12(f) of the Second Amended Complaint. Those paragraphs allege the following:

11. The Defendant's former maitre'd, Scott Rouseau, who happens to be the son of the owner of the Defendant restaurant, called a customer a "cock-sucking Jew" in the presence of the Plaintiff; and

12. Rouseau regularly referred to African American customers of the defendant as

"niggers" and on one occasion, in Plaintiff's presence, stated that "I wish that nigger would hurry up and eat his dinner."

Defendant contends that these paragraphs should be stricken as "immaterial, impertinent or scandalous" pursuant to Fed.R.Civ.P. 12(f) since the comments describe racial or religious bigotry rather than bigotry based on sex.

 Motions to strike are generally disfavored. *United States v. Marisol*, 725 F.Supp. 833 (M.D.Pa.1989). A motion to strike should be granted only when the material at issue bears no possible relation to the controversy or may cause prejudice to the party opposing the motion. *Talbot v. Robert Matthews Distr. Co.*, 961 F.2d 654 (7th Cir. 1992). The Third Circuit has acknowledged the broad scope of a claim of hostile work environment. *West*, 45 F.3d at 756–57 (inquiry not limited to same actor or same conduct). Because the behavior alleged in paragraphs 12(e) and (f) may be relevant to the question of hostile work environment, this Court will deny defendant's Motion to Strike.

An appropriate Order follows.

### *ORDER*

AND NOW, this 22nd day of September, 1995, upon consideration of defendant's Motion to Dismiss Counts I, II, and IV of the Second Amended Complaint and Motion to Strike Certain Paragraphs of that Complaint, and plaintiff's response thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that said Motion is GRANTED in part and DENIED in part as follows:

1. Plaintiff's claim of *quid pro quo* sexual harassment as alleged in paragraphs 14–16 of the Second Amended Complaint is DISMISSED.

2. Count IV is DISMISSED.

3. Defendant's Motion is DENIED as to all other claims.

AND IT IS SO ORDERED.