Germaine Lee WILLIAMS, Plaintiff,

v.

DISTRICT OF COLUMBIA, Defendant.

Civil Action No. 94–02727 (JHG).

United States District Court,
District of Columbia.

Feb. 5, 1996.

Theodore R. Banks, Washington, DC, for plaintiff.

Germaine Lee Williams, Baltimore, MD, pro se.

James A. DeVita, Office of Corporation Counsel, D.C., Washington, DC, for District of Columbia Department of Human Services, District of Columbia.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending is the defendant District of Columbia's motion to dismiss or, in the alternative, for summary judgment. Because the parties have not submitted materials beyond the pleadings for the Court's consideration and because discovery has not commenced, the Court will not convert the defendant's motion to dismiss to a motion for summary judgment. For the reasons expressed below, the motion to dismiss will be granted in part and denied in part.

### I. Background

The plaintiff, Germaine Lee Williams ("Williams"), filed this action against the District of Columbia for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988 & Supp. V 1993) and for deprivation of her Fifth Amendment rights under the Civil Rights Act of 1870 ("Section 1983"), 42 U.S.C. § 1983 (1988 & Supp. V 1993). Pendent to the federal causes of action are common law claims of assault and battery, negligent training and retention, and intentional infliction of emotional distress under District of Columbia law. Because this matter is before the Court on the defendant's motion to dismiss, the Court assumes true those facts offered by the plaintiff, Williams. *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 33 (D.C.Cir. 1987).

Since December 5, 1988, Williams has worked for the District of Columbia as a Youth Correctional Officer at the Cedar Knoll Detention Facility in Laurel, Maryland. Complaint, at ¶ 5. At Cedar Knoll, Williams is supervised by Barbara Anderson ("Anderson"), whom the plaintiff alleges sexually harassed her from late 1990 until late 1992. *Id.* at ¶¶ 8–10.

Williams avers that the sexual harassment by Anderson was both verbal and physical in nature. Commencing in January of 1991, Anderson made comments regarding Williams' physical appearance, including statements about the size of Williams' breasts and the color of her bras. *Id.* at ¶ 13. These statements increased in frequency as 1991 progressed and bothered

Williams so much that she would wear a winter coat during the summer to prevent Anderson from seeing her body. *Id.* at ¶ 14.

At some point, Anderson asked Williams to go away with her. *Id.* at ¶ 15. Williams rejected Anderson's overtures and Anderson embarked upon a course of retaliatory conduct. *Id.* at ¶¶ 16–17. Anderson changed Williams' work assignments, *id.* at ¶ 17, including assigning Plaintiff Williams to work directly with her. *Id.* at ¶ 20. While working with Williams, Anderson would touch the plaintiff's breasts and rub her breasts against the plaintiff's back. *Id.* at ¶ 19. Anderson also told Williams that if she did not comply with her wishes, Williams would be fired. *Id.* at ¶ 23. Anderson, in retaliation for being spurned, would assign Williams work in "high risk troublesome cottages." *Id.* at ¶ 24. Anderson also treated Williams differently than other employees by placing her on Absent Without Leave (AWOL) status [1] if she was one-minute late, or by docking her pay if she was 15 minutes late, even though other employees were treated more liberally. *Id.* at ¶¶ 24–25.

Williams sought relief and assistance from her supervisors, but initially received none. *Id.* at ¶ 18. Finally, her request for a shift change was granted, *id.* at ¶ 22, but Anderson remained as her supervisor and the harassment continued anyway. *Id.* at ¶¶ 26–28. In the fall of 1991, Anderson called Williams at her new assignment and invited her to spend time with Anderson at her cabin. *Id.* at ¶ 28. Once again, Williams rejected the proposition, stating that she was a happily married heterosexual. *Id.* at ¶ 29. Williams again complained to management (Assistant Supervisor Underdown), but was told "you just have to put up with it." *Id.* at ¶ 30. She then sought relief from Acting Superintendent Wormsley, but he canceled each appointment once he learned that the matter involved these allegations against Anderson. *Id.* at ¶¶ 31–32.

Fifteen months after Anderson began supervising Williams, knowledge of Anderson's sexual harassment was well known among the midnight shift staff. *Id.* at ¶ 41. Apparently, it also became known that Williams had sought relief from management, because on April 21, 1992, Anderson sought Williams out and assaulted her. *Id.* at ¶ 42. Williams alleges that, after Anderson told the only other person in the canteen room to leave, she slammed Williams into the wall and said: "Bitch, I'm not going to lose my job over you. No matter what you say, I'm going to come out smelling pretty because you are temporary and I have been here too long." *Id.* Williams tried to leave, but Anderson again slammed her into the wall, severely injuring Williams' back. *Id.* at ¶ 43.

After the alleged assault, Anderson denied Williams' request for medical treatment. *Id.* at ¶ 44. Ultimately, Williams sought medical care, but missed work as a result of the injury and the onset of depression. *Id.* at ¶¶ 47–48. On April 27, 1992, she applied for workers' compensation, but Anderson interfered, delaying submission of the forms and forcing Williams to return to work earlier than her doctor had recommended. *Id.* at ¶¶ 47–49.

On December 20, 1994, Williams, acting *pro se,* filed a six-count complaint against the District of Columbia.[2] In Count I, she alleges sexual harassment in violation of Title VII. In Count II, she asserts a common law claim against the District of Columbia for intentional infliction of emotional distress. Count III is a claim under Section 1983, alleging that the sexual harassment "was perpetrated under Anderson's authority as a District of Columbia law enforcement official [which] deprived the plaintiff of her constitutional civil rights under the Fifth Amendment of the United States Constitution." *Id.* at ¶ 60. Count IV is a claim under District of Columbia common law, based upon the District's negligent training and retention of Anderson, whom Williams avers the District knew or should have known had a "propensity for

---

1. Placement on AWOL status prevented an employee from working overtime. Complaint, at ¶ 34.

2. Williams actually filed a seventh count, entitled "Respondeat Superior." Because *respondeat superior* is not a separate cause of action but is an element underlying some of Williams' allegations, it is not considered separately.

sexual intimidation and the use of unreasonable and excessive force." *Id.* at ¶ 68. In Counts V and VI, Williams asserts her claims of assault and battery, respectively.

As relief, Williams seeks compensatory damages in the amount of $500,000, punitive damages in the amount of $500,000, attorneys' fees and costs. She has demanded a jury trial.

After Williams filed her complaint in this Court, she moved to a new home, but failed to provide the Court with her new address. On March 17, 1995, she was provided notice at her previous address that unless proof of service was filed with fifteen days, her complaint would be dismissed without prejudice. She failed to respond and, on June 7, 1995, her complaint was dismissed. On July 11, 1995, the Court reinstated her complaint, based upon her motion in which she alleged that she had lost her home after the defendant terminated her workers' compensation benefits in January of 1995.

On August 21, 1995, the Court granted the defendant's motion to dismiss the District of Columbia Department of Human Services as a defendant in this matter, based upon the defendant's argument that the Department of Human Services is not a *sui juris* entity. The Court also ordered the plaintiff, who had at that time retained counsel, to respond to the pending motion to dismiss. On August 31, 1995, Williams, through counsel, filed her opposition to the motion. On November 16, 1995, without any explanation and without requesting leave to file untimely, the defendant filed its reply.[3]

## II. Discussion

 In considering a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439, 1442 (D.C.Cir.1989). The factual allegations of the complaint are

assumed to be true and are construed liberally in favor of the plaintiff. *Zoelsch,* 824 F.2d at 33; *see also* 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357, at 304 (1990). The plaintiff is entitled to all favorable inferences, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994), and the *pro se* complaint will be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

In its motion to dismiss, the defendant makes five arguments: (1) that the common law claims must be dismissed because Williams failed to comply with the notice requirements of D.C.Code § 12–309; (2) that, alternatively, the assault and battery claims must be dismissed because of her failure to file before the expiration of the statute of limitations; (3) that the Section 1983 claim must be dismissed because Williams cannot demonstrate an affirmative nexus between a custom, policy or practice of the District of Columbia and the constitutional violations alleged; (4) that the Title VII claim must be dismissed, because same-sex sexual harassment is not actionable under Title VII; and, finally, (5) that even if the common claims are not dismissed on the grounds proposed above, they must be dismissed in the absence of a valid federal claim. *See* Defendant District of Columbia's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, For Summary Judgment ("Motion to Dismiss"), *passim.* The common law claims, the Section 1983 claim and the Title VII claim will be addressed *seriatim.*

### A. The common law claims.

The defendant makes two arguments to dispose of Williams' common law claims. First, that the claims are barred, because Williams failed to file within the one-year statute of limitations period applicable to assault and battery. *See* Motion to Dismiss, *supra,* at 3. Second, that Williams failed to comply with the notice requirements of D.C.Code § 12–309. *See id.* at 2–3.

---

**3.** Because the reply was untimely filed by over two months, it will be stricken and will not be

considered in resolving the motion to dismiss.

While apparently conceding noncompliance with Section 12–309 on Counts II (intentional infliction of emotional distress) and IV (negligent training and retention), Williams argues that the District of Columbia was, in fact, placed on notice of the assault and battery claims (Counts V and VI) when she filed her workers' compensation claims. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Plaintiff's Opposition"), at 7. However, even if the Court were to accept Williams' argument that she satisfied the strict notice requirements of Section 12–309, she must first overcome the statute of limitations applicable to the assault and battery claims. To preserve these claims, she suggests that the Court should consider applying the doctrine of equitable tolling "[i]n order to serve the ends of justice where technical forfeiture would unjustifiably prevent a trial on the merits." Plaintiff's Opposition, *supra*, at 8.

■ In the District of Columbia, assault and battery claims are subject to a one-year statute of limitations period. D.C.Code Ann. § 12–301(4). Williams alleges that Anderson assaulted her on April 21, 1992. She filed her complaint on December 20, 1994, well beyond of the statute of limitations for the torts of assault and battery. *See Maddox v. Bano,* 422 A.2d 763, 764–65 (D.C.1980); *Kelton v. District of Columbia,* 413 A.2d 919, 922 (D.C.1980). While importuning the Court to apply the doctrine of equitable tolling, Williams has provided no reason for her failure to file timely, suggesting only that the merits of her case justify tolling because compliance with the statute of limitations is a mere technicality. However, the plaintiff has not cited any authority, nor is this Court aware of any, in which the doctrine of equitable tolling has been applied absent *some* justification for the plaintiff's failure to file timely. In the District of Columbia, equitable tolling is disfavored even where plaintiffs have offered justification for their failure to

file timely. *E.g., Curtis v. Aluminum Association,* 607 A.2d 509, 512–13 (D.C.1992) (rejecting equitable tolling); *In re M.N.M.,* 605 A.2d 921, 925–26 (D.C.1992) (rejecting equitable tolling); *Bond v. Serano,* 566 A.2d 47, 49 (D.C.1989) (rejecting equitable tolling). In construing D.C. law, federal courts cannot apply the doctrine of equitable tolling differently than would the District of Columbia courts. *See, e.g., Farris v. Compton,* 802 F.Supp. 487, 489 n. 2 (D.D.C.1992).

In this case, Williams failed to file timely her assault claim (Count V) and her battery claim (Count VI). She has presented no justification for her failure to file timely nor has she offered any legal authority to support her theory of equitable tolling. The motion to dismiss Counts V and VI will be granted, because both are barred by the statute of limitations, D.C.Code § 12–301(4).

■ Even though Counts II and IV were filed within the three-year statute of limitations period applicable under D.C.Code § 12–301(8), to maintain her claims against the District of Columbia government, Williams must have provided, within six months of the injury, "notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." D.C.Code § 12–309 (1995) [4]; *see Wharton v. District of Columbia,* 666 A.2d 1227, 1229–30 (D.C. 1995); *see also Kirkland, et al., v. District of Columbia,* 70 F.3d 629, 632 (D.C.Cir.1995). The purpose of this requirement is to provide officials with early notice so that they may promptly investigate the matter to preserve evidence and identify witnesses; correct the condition to avoid future problems; and engage in settlement negotiations to resolve claims with merit. *Gwinn v. District of Columbia,* 434 A.2d 1376, 1378 (D.C.1981). Compliance is mandatory and the statute is construed narrowly. *Wharton,* 666 A.2d at 1230; *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995); *Worthy v. Dis-*

---

4. Section 12–309 of the D.C.Code provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given no-

tice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

*trict of Columbia,* 601 A.2d 581, 582 (D.C. 1991); *Winters v. District of Columbia,* 595 A.2d 960, 961 (D.C.1991). However, precise exactness is not required, *Pitts v. District of Columbia,* 391 A.2d 803, 807 (D.C.1978), and once notice is provided, the content of that notice is construed liberally. *Wharton,* 666 A.2d at 1230.

Williams argues that the prompt filing of her workers' compensation claims satisfied the requirements of Section 12–309 as to the assault and battery claims. In the posture of a motion to dismiss where Williams is entitled to all reasonable inferences, she may have been correct. Nevertheless, because those claims are barred by the one-year statute of limitations, the Court need not address that argument. Williams has not, however, asserted this same argument to preserve Count II (intentional infliction of emotional distress) and Count IV (negligent training and retention). Her failure to assert this claim is unsurprising since the workers' compensation claim is based upon the assault and battery of April 21, 1992, whereas Counts II and IV involve times, places, causes and circumstances that extend well beyond the assault and battery.[5]

The common law claims in counts II, IV, V and VI will be dismissed.

## B. The Section 1983 claim.

The District of Columbia also moves for dismissal on Count III, arguing that the plaintiff has not alleged, and cannot demonstrate, a nexus between Anderson's sexually harassing conduct and a custom, policy or practice of the District of Columbia. *See* Motion to Dismiss, *supra,* at 4. In response, Williams argues that "whether plaintiff can demonstrate the District of Columbia's custom or deliberate indifference to supervisory Youth Correctional Officer misconduct," Plaintiff's Opposition, *supra,* at 8, is a question that cannot be resolved on a motion to dismiss before the plaintiff is allowed discovery. *Id.* For the purposes of a motion to dismiss, the question is simply whether, assuming the allegations in the complaint are true, the plaintiff has stated a cause of action under Section 1983.

In Count III of her complaint, Williams alleges that the harassment described therein "was perpetrated under Anderson's authority as a District of Columbia law enforcement official and deprived the plaintiff of her constitutional civil rights under the Fifth Amendment of the United States Constitution." Complaint, at ¶ 59. Construed liberally, as the Court must, Williams' complaint avers that Anderson's pervasive, repeated and well-known sexual harassment was effected through Anderson's official authority, with the knowledge of Anderson's superiors. Assumed true, it is not clear beyond doubt that Williams has failed to state a claim under Section 1983.

The acts of a single official with final policymaking authority can be sufficient to establish municipal liability under Section 1983, if the complaint sets forth a "plausible nexus" between the challenged conduct and the authority conferred. *St. Louis v. Praprotnik,* 485 U.S., 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). Whether a particular person has "final policymaking authority" is a question of District of Columbia law, *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989); *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924; *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1299–1300, and, in this case, it would turn upon whether Anderson is a person with final policymaking authority such that the District of Columbia could be exposed to liability for her actions because of the scope and nature of the authority that the District has vested in

---

5. Williams has also failed to allege that the District of Columbia had actual knowledge of the breach and the injuries arising from Counts II and IV, so as to fall within the narrow exception to the strict requirements of Section 12–309, carved out by the D.C. Court of Appeals in *District of Columbia v. Campbell,* 580 A.2d 1295, 1299 (D.C.1990) and *Shehyn v. District of Colum-* *bia,* 392 A.2d 1008, 1013–14 (D.C.1978). While the plaintiff is entitled to all reasonable inferences, it is not reasonable to infer actual notice of breach and injury in order to preserve the plaintiff's claim and allow her to fall within a narrow exception to a statute that is strictly construed by D.C. courts.

her. *Haynesworth v. Miller,* 820 F.2d 1245, 1272 (D.C.Cir.1987).

■ The District of Columbia attempts to seize upon Williams' failure to allege a specific policy or custom. However, such failure is no longer fatal to a Section 1983 claim when attacked in a motion to dismiss. *Atchinson v. District of Columbia, et al.,* 73 F.3d 418, 420 (D.C.Cir.1996); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading requirements for Section 1983 complaints). Williams "need not allege all that [she] must eventually prove," *Atchinson,* 73 F.3d at 422, and a complaint that fails to include that which she has not yet been provided an opportunity to discover cannot be fatally defective. The motion to dismiss Count III will be denied.

### C. The Title VII claim.

■ Finally, the District of Columbia attacks Williams' Title VII claim in Count I of her complaint. In a single paragraph, relying solely upon a decision by the U.S. Court of Appeals for the Eighth Circuit, the District of Columbia summarily concludes that Title VII does not apply to cases involving sexual harassment by a supervisor of the same sex. *See* Motion to Dismiss, *supra,* at 5 (citing *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69 (8th Cir.1989)). In opposition, Williams argues that her claim of sexual harassment falls within Title VII's prohibition of discrimination based upon gender: Anderson harassed her because of her gender, affecting the terms and conditions of her employment, and causing her injury. *See* Plaintiff's Opposition, *supra,* at 10–11.

Title VII makes it unlawful for an employer "to discriminate against an individual with respect to [her] compensation, terms, conditions or privileges of employment, *because of such individual's ... sex*" 42 U.S.C. § 2000e–2 (emphasis added). The text of this statute is gender neutral and contains no suggestion that the sex of either gender is a prerequisite to maintaining a claim under Title VII. Moreover, in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court emphasized that "[t]he phrase 'terms, conditions, privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." · *Id.* at 64, 108 S.Ct. at 2404. Later in *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1994), Justice Ginsburg explained that "[t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at ——, 114 S.Ct. at 372 (Ginsburg, J., concurring).

Simply put, Title VII broadly prohibits all forms of sex discrimination, which includes sexual harassment. Contrary to the conclusory statements offered as argument, Title VII makes no distinction based upon sexual orientation: the determinative question is not the orientation of the harasser, but whether the sexual harassment would have occurred *but for* the gender of the victim. 42 U.S.C. § 2000e–2(a)(1) (prohibiting an employer from discriminating against an individual "*because of* such individual's sex") (emphasis added); *See Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981).

Relying solely upon a decision by the Eighth Circuit, the defendant has failed to mention the considerable weight of authority in which federal courts have held directly, implied, or stated in *dicta* that same-sex sexual harassment is actionable under Title VII. *E.g., Baskerville v. Culligan Int'l. Co.,* 50 F.3d 428, 430 (7th Cir.1995); *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Morgan v. Massachusetts Gen. Hosp.,* 901 F.2d 186, 192–93 (1st Cir.1989); *Bundy,* 641 F.2d at 942 n. 7; *Barnes v. Costle,* 561 F.2d 983, 990 n. 55 (D.C.Cir.1977); *Easton v. Crossland Mortgage Corp.,* 905 F.Supp. 1368, 1378–79 (C.D.Cal.1995); *Ecklund v. Fuisz Technology, Ltd.,* 905 F.Supp. 335, 337–39 (E.D.Va. 1995); *Blozis v. Mike Raisor Ford,* 896 F.Supp. 805, 806, 68 FEP Cases 711, 712–13 (N.D.Ind.1995); *Raney v. District of Columbia,* 892 F.Supp. 283, 286–88 (D.D.C.1995); *Nogueras v. University of Puerto Rico,* 890

F.Supp. 60, 62–63 (D.P.R.1995); *Griffith v. Keystone Steel & Wire,* 887 F.Supp. 1133, 1135 (M.D.Tenn.1995); *EEOC v. Walden Book Co.,* 885 F.Supp. 1100, 1103 (M.D.Tenn. 1995); *Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545, 1549–51 (M.D.Ala.1995); *McCoy v. Johnson Controls Servs., Inc.,* 878 F.Supp. 229, 231–32 (S.D.Ga. 1995); *Polly v. Houston Lighting and Power Co.,* 825 F.Supp. 135, 137 (S.D.Tex.1993); *Marrero–Rivera v. Department of Justice,* 800 F.Supp. 1024, 1027 (D.P.R.1992), *aff'd.,* 36 F.3d 1089 (1st Cir.1994); *Joyner v. AAA Cooper Transportation,* 597 F.Supp. 537, 542 (M.D.Ala.1983), *aff'd.,* 749 F.2d 732 (11th Cir. 1984); *Wright v. Methodist Youth Servs., Inc.,* 511 F.Supp. 307, 310 (N.D.Ill.1981); *see also Ton v. Information Resources,* 1996 WL 5322, at *5–6 (N.D.Ill., Jan. 3, 1996); *Sardinia v. Dellwood Foods, Inc.,* 1995 WL 640502, at *6 (S.D.N.Y., Oct. 30, 1995); *King v. M.R. Brown, Inc.,* 911 F.Supp. 161, 166–68, (E.D.Pa., Sept. 25, 1995); *Pritchett v. Sizeler Real Estate Mgt. Co.,* 1995 WL 241855, at *2, 67 FEP Cases 1377, 1378–79 (E.D.La., Apr. 25, 1995); *Boyd v. Vonnahmen,* 1995 WL 420040, at *3 (S.D.Ill., Mar. 29, 1995); *Roe v. K–Mart Corp.,* 1995 WL 316783, at *2 (D.S.C., Mar. 28, 1995).

The defendant's reliance upon *Williamson* for authority is misplaced, because this case does not, in fact, stand for the proposition that same-sex sexual harassment is beyond the reach of Title VII. In *Williamson,* the Eighth Circuit simply stated that "Title VII does not prohibit discrimination against homosexuals." 876 F.2d at 70. Whether the *Williamson* court is correct [6] is beside the point: its holding simply has nothing to do with the issue presented by Williams' case. There has been no claim here that Williams was discriminated against because of her orientation, which appears to have been the issue before the Eighth Circuit in *Williamson.* The question presented here is simply whether the plaintiff was harassed *because of* her gender.

Although the authority upon which the defendant would rely is inapposite, other federal courts have found that same-sex sexual harassment is beyond the reach of Title VII. *E.g., Garcia v. Elf Atochem N. Am.,* 28 F.3d 446, 451–52 (5th Cir.1994); *Fredette v. BVP Management Associates,* 905 F.Supp. 1034, 1037 (M.D.Fla.1995); *Mayo v. Kiwest Corp.,* 898 F.Supp. 335, 337 (E.D.Va.1995); *Ashworth v. Roundup Co.,* 897 F.Supp. 489, 494 (W.D.Wash.1995); *Benekritis v. Johnson,* 882 F.Supp. 521, 525–26 (D.S.C.1995); *Myers v. City of El Paso,* 874 F.Supp. 1546, 1548 (W.D.Tex.1995); *Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822, 831–35 (Md. 1994); *Vandeventer v. Wabash Nat'l. Corp.,* 867 F.Supp. 790, 796 (N.D.Ind.1994). *Cf. McWilliams v. Fairfax County Board of Supervisors,* 72 F.3d 1191, 1194 (4th Cir., Jan. 9, 1996) (heterosexual-male-on-heterosexual-male harassment involving "horseplay" of a sexual nature not protected by Title VII). However, these courts all rely, directly or indirectly, upon the reasoning of *Goluszek v. H.P. Smith,* 697 F.Supp. 1452 (N.D.Ill.1988), which reasoning this Court cannot accept. Without citing to the statute or case law, or even to the underlying congressional history of Title VII, the *Goluszek* court concluded that Congress' concern in enacting Title VII was about abuses stemming from an imbalance of power "which results in discrimination against a discrete and vulnerable group." *Goluszek,* 697 F.Supp. at 1456 (citing solely to a 1984 student law review note). This Court agrees with Judge Preska, who, in *Sardinia v. Dellwood Foods, Inc.,* 1995 WL 640502, 64 U.S.L.W. 2329, 69 Fair.Emp.Prac. Cas. (BNA) 705, 67 Emp.Prac.Dec.P. 43,784, No. 94–C–5458 (S.D.N.Y., Oct. 30, 1995), pierced *Goluszek*'s reasoning.

Judge Preska cited at least seven analytical problems underlying *Goluszek.* First, the support underlying its central proposition came not from Congress, but from a law student. *Id.* at *4.[7] Second, the student

---

6. At least one commentator has a found a basis in Title VII for the protection of individuals based on their sexual orientation. *See* Samuel A. Marcosson, *Harassment on the Basis of Sexual Orientation: A Claim of Sex Discrimination Under Title VII,* 81 Geo.L.J. 1 (1992).

7. Remarkably, to articulate Congress' intent, the *Goluszek* court relied solely upon a student author's note, a feat even more remarkable in that the student author was not even discussing congressional intent. *See Goluszek,* 697 F.Supp. at 1456 (citing Note, *Sexual Harassment Claims of*

note was written long before the Supreme Court even handed down *Meritor Savings Bank. Id.* Third, as Judge Preska noted, "there is nothing in the language of Title VII to support a finding that same-sex harassment is not prohibited.... On the contrary, the language of the statute is non-exclusive, creating a broad rule of workplace equality. Title VII makes discrimination at the workplace on the basis of gender illegal, period." *Id.* at *5. Fourth, *Goluszek* departs from *Meritor*'s clear command that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, the supervisor discriminates on the basis of sex." *Id.* (citation and internal quotes omitted). Fifth, "courts since *Meritor* have found it untenable to allow reverse discrimination cases but not same-sex sexual harassment cases to proceed under Title VII." *Id.* (quoting *EEOC v. Walden Book Co,* 885 F.Supp. 1100, 1103 (M.D.Tenn.1995) and citing *McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). Sixth, the EEOC's guidelines, upon which the Supreme Court heavily relied in *Meritor Savings Bank,* adopt the requirements that "(1) actionable discrimination be based on the victim's sex, or gender, as opposed to the victim's sexual orientation; and that (2) the harasser does not treat employees of the opposite sex (from the victim) the same way." *Id.* (citing EEOC Compliance Manual § 615.2 (1981)).[8] Seventh, and last, the harms resulting from same-sex sexual harassment are no less severe than those perpetrated by harassers of the opposite sex. *Id.*

Even if *Goluszek*'s reasoning were sound, however, it would not undermine Williams'

Title VII claim. The reasoning underlying *Goluszek* is that Title VII's purpose is to prohibit sexual harassment based upon the abuse of a supervisor's power. The court in *Goluszek* rejected same-sex sexual harassment, because the situation presented in *Goluszek,* involving male co-worker harassers and a male victim, did not involve an abuse of power. But even if that were so in *Goluszek,* it is not true that all same-sex sexual harassment scenarios do not involve an abuse of power by a supervisor over an employee. The facts in Williams' case fall squarely within the abuse of power rationale that the *Goluszek* court and its progeny apparently believe to be the underpinning of Title VII. The facts alleged by Williams fall even more squarely within the contours of sexual harassment law as defined by the Supreme Court: "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Savings Bank,* 477 U.S. at 64, 106 S.Ct. at 2404.

Absent compelling legislative history to the contrary, federal courts are obligated to apply statutes as written. Title VII, as written, protects victims of sexual harassment who are harassed *because of* their sex. There is no legislative history that suggests that victims of sexual harassment must be sexually harassed by harassers of the opposite sex before they may invoke the protections of Title VII. Had Congress intended to insulate sexual harassers from liability as long as those sexual harassers selected their victims carefully, not only should Congress have spoken more clearly, it could have at least said something.

*Abusive Work Environment Under Title VII,* 97 Har.L.Rev. 1449, 1451–52 (1984)). While the student's focus was on heterosexual, male-on-female harassment, this Court is not critical of the work by the student author, who was, pre-*Meritor Savings Bank,* offering an analytical legal framework to adjudicate claims of sexual harassment in the workplace. The student note did not even discuss same-sex sexual harassment. *See Sardinia,* 1995 WL 640502, at *7 n. 4. It is surprising, however, that a student note could be stretched so far by so many to establish a basis for the proposition that Title VII, contrary to its

plain text, does not prohibit same-sex sexual harassment.

8. The current EEOC Compliance Manual states: If a male supervisor of male and female employees makes unwelcome sexual advances toward a male employee because the employee is male but does not make similar advances toward female employees, then the male supervisor's conduct may constitute sexual harassment since the disparate treatment is based on the male employee's sex.
2 EEOC Compl.Man. (BNA) § 615.2(b)(3) (ex. 1) (June 1987).

If the specific text of Title VII, its legislative history and underlying purpose, the general weight of authority and plain logic are not enough to make clear that the protections of Title VII extend to victims of sexual harassment like Williams, this Circuit has so stated, even if it has not squarely held. *See Bundy,* 641 F.2d at 942 n. 7; *Barnes,* 561 F.2d at 990 n. 55 (D.C.Cir.1977); *see also Raney,* 892 F.Supp. at 286–88; *Ryczek v. Guest Services Inc.,* 877 F.Supp. 754, 761 & n. 6 (D.D.C.1995).

In this case, Williams has alleged sufficient facts, assumed to be true, to support both her hostile environment and *quid pro quo* sexual harassment claims. Whether Williams' supervisor is male or female, the nature of the allegations, assumed to be true when attacked by a motion to dismiss, lead to one conclusion: but for Williams' gender, Anderson would not have sexually harassed her. Conduct like that of Anderson's alleged sexual harassment is prohibited by Title VII. The motion to dismiss will be denied.

### III. Conclusion

Accordingly, for the reasons stated above, it is

ORDERED that the defendant's motion to dismiss is granted in part and denied in part; it is

FURTHER ORDERED that the defendant's motion is granted as to Counts II, IV, V and VI; and it is

FURTHER ORDERED that the motion is denied as to Counts I and III; and it is

FURTHER ORDERED that a status conference is set for Wednesday, March 6, 1996, at 9:15 a.m.

IT IS SO ORDERED.