**Michael R. GERD, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

Civil Action No. 96–B–6.

United States District Court, D. Colorado.

Aug. 19, 1996.

Randal R. Kelly, Denver, CO, for Plaintiff.

John R. Webb, Matthew J. Rita, Holme Roberts & Owen, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant United Parcel Service, Inc. (UPS) moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this action for failure to state claims upon which relief can be granted. Plaintiff Michael R. Gerd (Gerd) brings this action against UPS for violation of Title VII, 42 U.S.C. § 2000–e et seq., breach of express and implied contract, breach of express oral contract and promissory estoppel. The motion is fully briefed and heard. For the reasons set forth in this order, I deny the motion to dismiss.

### I.

Gerd alleges the following facts. Gerd was employed by UPS on September 22, 1985. In 1989 he was promoted to the position of part-time supervisor. "Beginning in October of 1993, [Gerd] was subjected to a series of unwelcome sexual or otherwise abusive conduct which was directed at [him] as a man. [Gerd] was subjected to and offended by this harassment because of his gender." Compl. ¶ 12. The first incident occurred when Gerd was asked for his phone number in connection with work. After overhearing the request, Mr. John Wish, a managerial employee of UPS stated "what's with all the phone numbers Gerd ... are these all your boyfriends numbers...." Compl. ¶ 13. Gerd then made an appropriate explanation for the change of phone numbers to which Wish responded "Are you sure you just don't shack up with a different guy each night." Id.

On October 22, 1993, Gerd was subjected to abusive conduct by another managerial employee, Brad Ansel. Ansel "walked up from behind [Gerd] and began rubbing his (Ansel's) hands up and down his thighs with his pelvis thrust forward in a fornicating gesture. While engaging in this physical conduct, Mr. Ansel, in the presence of another of Defendant's employees, Michael Lakos, stated 'hey wouldn't you love to see [Gerd]

get down on the floor and roll around and get dirty?' After [Gerd] had expressed his disgust with this conduct and comments, Mr. Lakos replied 'you didn't know that Brad was a member of the Village People ... he was the one that wore the tool belt.'" Compl. ¶ 14.

Gerd tried to telephone Steven Nord, UPS's human resources manager, at least two times in October of 1993 to report these incidences. Mr. Nord never returned his telephone calls.

On November 4, 1993, Lyle Dutton joined in the sexual abuse when he grabbed and squeezed Gerd's buttocks. This incident occurred in the presence of other employees.

On November 18, 1993, Nord and Gerd spoke about the abuse to which Gerd had been subjected. Nord told Gerd he would have to stick it out until peak season was over at which time he promised he would get him an interview with a different department of UPS. Compl. ¶ 17. On November 18, 1993 and January 5, 1994, Dutton engaged in offensive sexual conduct towards Gerd by touching or slapping him on the buttocks. Compl. ¶ 19.

Gerd met with Nord on January 7, 1994. In response to Gerd's complaints regarding Dutton, Nord laughed and stated "[Dutton] grabs everyone." Compl. ¶ 20. Gerd requested a transfer. Nord promised Gerd an interview with UPS's service division.

Gerd interviewed with Tom Vale, manager of customer services, on January 11, 1994. Vale told Gerd that he should get his supervisors and managers to recommend Gerd to Vale. Gerd explained that he had been subjected to abusive behavior by his co-workers, some of whom were his supervisors. Vale responded "well, you're bigger than all of them aren't you?" Compl. ¶ 21. Gerd replied that his job should not require him to physically defend himself. Vale explained that UPS was founded as a trucking company so such behavior was essentially acceptable. Gerd was not offered a transfer.

"On February 2, 1994, [Gerd] approached Defendant's managerial employee, Brad Ansel requesting wax for the slides used to manipulate packages. Mr. Ansel responded to [his] request by suggesting that he 'just beat off on the slides and use your cum.' Mr. Ansel used his hand feigning the act of masturbation while uttering this statement." Compl. ¶ 22.

Gerd filed sex discrimination charges with the Equal Employment Opportunity Commission (EEOC) on February 9, 1994. He later filed charges of retaliation. On March 2, 1994 and March 9, 1994, Dutton confronted Gerd regarding the EEOC charges. He threatened to "drop" Gerd or put him in a job he would dislike if he did not go to human resources and recant his statements about Dutton. Paul Jacobi, Gerd's immediate supervisor, was present at these confrontations. On June 30, 1994, Gerd terminated his employment with UPS.

## II.

■ For purposes of a motion to dismiss, I accept all factual allegations in the complaint as true and resolve all reasonable inferences in favor of the plaintiff. *Tri–Crown, Inc. v. American Federal Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990). A case should not be dismissed for failure to state a claim unless I determine beyond doubt that plaintiff can prove no set of facts which entitle him to relief. *Id.*

## III.

■ Gerd asserts hostile environment and retaliation claims against UPS for violation of Title VII. UPS argues that as a matter of law Gerd cannot state a claim under Title VII because it does not proscribe same-sex harassment. This is a matter of first impression in the Tenth Circuit. I hold that a cognizable claim for same-sex harassment lies under Title VII.

UPS cites cases from the Fourth and Fifth Circuits in support of its contention that same-sex harassment is not actionable under Title VII. In *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451–52 (5th Cir.1994), the plaintiff brought a Title VII action against his employer, Elf Atochem, his supervisor, Jerry Mowell and the harassing employee, Rayford Locke. The district court concluded that there was no viable Title VII

claim because defendants were employees of Seagraves Ozark not Elf Atochem, the parent corporation, Mowell had taken proper steps to rectify the problem, and Locke had not harassed Garcia after he was warned and reprimanded. The Fifth Circuit affirmed the district court's determination and further stated that "harassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. * * * Thus, what Locke did to Garcia could not in any event constitute sexual harassment within the purview of Title VII, and hence summary judgment in favor of all defendants was proper on this basis also." *Id.* at 451–52. In reaching this determination, the Fifth Circuit provided no statutory analysis and relied solely on *Giddens v. Shell Oil Co.,* 12 F.3d 208 (5th Cir.1993). As noted by a different panel of the Fifth Circuit in a later opinion, "[b]ecause the Court had already found an independent basis to affirm the grant of summary judgment to each defendant, no part of this analysis is necessary to support the ultimate decision." *Oncale v. Sundowner Offshore Services, Inc.,* 83 F.3d 118, 120 (5th Cir.1996). However, because the determination was one of two reasons for supporting the district court's determination, the *Oncale* court considered itself bound by *Garcia.*

The Fourth Circuit in *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1194–1197 (4th Cir.1996), held that same-sex harassment was not cognizable under Title VII where neither party is alleged to be homosexual. The Court focused on Title VII's requirement that the discrimination occur "because of the [person's] sex." In the view of the Fourth Circuit, this causation requirement could not be met where the conduct complained of was between heterosexual males because it was not based on the employee's sex. *Id.* at 1196.

More recently, in reversing a district court's grant of summary judgment for defendant employer under circumstances that closely parallel those here, a divided panel of the Eighth Circuit held that:

Protection under Title VII is not limited to only disadvantaged or vulnerable groups. It extends to all employees and prohibits disparate treatment of an individual, man or woman, based on that person's sex. *Harris v. Forklift Systems Inc.,* 510 U.S. 17, [114 S.Ct. 367, 126 L.Ed.2d 295] (1993). The district court therefore erred in requiring the employee to show evidence of an anti-male or predominantly female work environment.

*Quick v. Donaldson Co.,* 90 F.3d 1372, 1378 (8th Cir.1996). The majority of that panel further held that the district court erred in its determination that the alleged harassment was not gender based because the underlying motive was personal enmity or hooliganism. *Id.* Here, UPS likewise argues that the conduct alleged is mere "locker room" activity not subject to Title VII protection. The Eighth Circuit rejected such a notion because even in a mixed motive context, conduct which otherwise occurs in violation of Title VII is actionable. *Id.* The Eighth Circuit, thus, declined to follow the Fourth Circuit's rationale in *McWilliams.*

Moreover, the majority of district courts which have addressed same-sex claims under Title VII have found that a claim can be asserted where the claimant alleges that the harassment was based on the person's gender. *See Tietgen v. Brown's Westminster Motors, Inc.,* 921 F.Supp. 1495 (E.D.Va. 1996); *Williams v. District of Columbia,* 916 F.Supp. 1 (D.D.C.1996); *Tanner v. Prima Donna Resorts, Inc.,* 919 F.Supp. 351 (D.Nev.1996); *Ladd v. Sertoma Handicapped Opportunity Program, Inc.,* 917 F.Supp. 766 (N.D.Okla.1995); *Easton v. Crossland Mortg. Corp.,* 905 F.Supp. 1368 (C.D.Cal.1995); *King v. M.R. Brown, Inc.,* 911 F.Supp. 161 (E.D.Pa.1995). Title VII mandates that an employer not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, *sex* or national origin." 42 U.S.C. § 2000e–2(a)(2) (emphasis added). "Title VII creates an individual claim which is ripe before the work environment has been poisoned for all workers of one sex or the other. * * * It does not require that the work environment be hostile to all workers of the plaintiff's sex; it requires that the envi-

ronment be hostile to the plaintiff." *Tanner v. Prima Donna Resorts, Inc.*, 919 F.Supp. 351, 354 (D.Nev.1996).

In *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986), the Supreme Court addressed sex discrimination in the form of sexual harassment under Title VII. The Supreme Court referred to EEOC guidelines for the definition of sexual harassment. Under the guidelines, actionable conduct includes " '[u]nwelcome sexual advances, requests for sexual favors, and *other verbal or physical conduct of a sexual nature* ' ... where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Id.* at 65, 106 S.Ct. at 2404–05 (quoting 29 CFR §§ 1604.11(a) & (a)(3) (1985) (emphasis added)). Neither Title VII nor the interpretive guidelines refer to the sex of the offending party or the sex of the victim. The determinative inquiry is solely whether the conduct is sexual in nature and "whether the sexual harassment would have occurred but for the gender of the victim," *Williams v. District of Columbia*, 916 F.Supp. 1, 7 (D.D.C.1996), because "[t]he phrase 'terms, conditions, privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2404. "Just as courts do not inquire into the sexual preferences of the victim in cases of opposite sex harassment, the sexual preference of the victim should be a non-issue in a same-sex sexual harassment case." *Tanner*, 919 F.Supp. at 355.

■ Here, Gerd alleges that Ansel and Dutton touched him in sexually offensive ways. His complaint alleges numerous incidences of sexually offensive behavior which were directed at him "as a man." If such conduct were directed at a female in Gerd's position there would be a clear inference that the conduct was motivated because of her sex. Although the motive and causation may be less evident in same-sex harassment actions, these issues tend to be fact specific and should not be resolved under Fed.R.Civ.P. 12. Gerd has alleged sufficient facts to state a claim that the conduct was directed at him because of his gender. Consequently, I conclude that he has stated a claim for relief for sex discrimination under Title VII.

### IV.

■ UPS also moves for dismissal of Gerd's claims for breach of contract based on the UPS employment manual, breach of oral contract, and promissory estoppel. In his amended complaint, Gerd alleges that "UPS created express and implied in law contractual conditions and guarantees of employment that Plaintiff would be allowed to work in an environment which was free from sexual and abusive conduct." In consideration for these express conditions, Gerd alleges he continued to offer his services as an employee. Gerd asserts that UPS breached this condition of employment when it failed to transfer him to a different department and permitted the offensive and abusive conduct to continue. Under Colorado law, written policies of an employer can form the basis of a breach of contract action. *Tuttle v. ANR Freight System*, 797 P.2d 825, 827 (Colo.App.1990). Accordingly, Gerd has stated a claim for relief for breach of contract and the motion to dismiss this claim is denied.

■ Next, UPS argues that Gerd's claims for breach of an express oral contract and promissory estoppel should be dismissed because UPS never intended to enter into a binding contractual relationship. However, the face of the complaint sufficiently alleges the existence of an oral contract between UPS and Gerd regarding his transfer to another department of UPS or in the alternative a claim for promissory estoppel based on UPS' assertions that he would be transferred. Consequently, the motion to dismiss is denied on these claims.

Accordingly it is ORDERED that:

Defendant's motion to dismiss is DENIED.