Rosemarie LUCERO–NELSON, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Defendant.

No. CIV. A. 92–2401 EGS.

United States District Court,
District of Columbia.

Feb. 24, 1998.

John Kovin, Edward Han, Lara Degenhart, Howrey & Simon, Washington, D.C., for Plaintiff.

Bruce Paul Heppen, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, D.C., for Defendant.

### MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

#### I. Introduction

Plaintiff, Rosemarie Lucero–Nelson, commenced this action for damages and other relief against defendant, Washington Metropolitan Area Transit Authority ("WMATA"), alleging that WMATA subjected her to sexual harassment, national origin discrimination, and a hostile working environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e)(1988 & Supp. V 1993), and the District of Columbia Human Rights Act, D.C.Code 1981, as amended, §§ 1–2501, *et seq.* Plaintiff also asserts a pendent common law tort claim for damages for intentional infliction of emotional distress, and a claim for damages under 42 U.S.C. § 1983 for deprivation of her rights, privileges and immunities provided by the United States Constitution and federal laws. Plaintiff seeks an award of compensatory and punitive damages, attorneys fees and equitable relief.

Pending before the Court is WMATA's motion for summary judgment on plaintiff's Title VII claims on three grounds: (1) that the plaintiff failed to timely file her claims with the EEOC; (2) that Title VII does not encompass sexual harassment claims involving members of the same gender ("same sex" claims); and (3) that plaintiff has failed to raise any issue of material fact as to her *prima facie* case of Title VII hostile work environment. As for plaintiff's other claims, defendant asserts its sovereign immunity as an arm of the state and federal government as grounds for rejecting plaintiff's claims arising out of the D.C. Human Rights Act, her claim under 42 U.S.C. § 1983, and her claims for punitive damages. Finally, defendant contends that plaintiff's tort claim of intentional infliction of emotional distress is barred by the D.C. Workers Compensation Act ("WCA"), or, in the alternative, that this tort claim should be dismissed until the Department of Employment Services can assess whether WCA covers this claim.

Upon consideration of WMATA's motion for summary judgment, the points and authorities in support of and in opposition to the same, and the arguments of counsel, the

motion is **GRANTED in part and DENIED in part** for the reasons set forth in this Opinion.

WMATA is entitled to summary judgment on plaintiff's claims under the D.C. Human Rights Act and plaintiff's § 1983 claim. The Court denies summary judgment on plaintiff's claims of sexual harassment, national origin discrimination, and hostile work environment. The Court also denies WMATA's motion for summary judgment as to plaintiff's claim of intentional infliction of emotional distress. Finally, since WMATA is a quasi-governmental entity, plaintiff is precluded from recovering punitive damages against WMATA.

## II. Standard of Review

WMATA has moved for summary judgment under Federal Rule of Civil Procedure 56 on all counts. Summary judgment should be granted only if defendant has shown that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879 (D.C.Cir.), *reh'g en banc granted,* 124 F.3d 1302 (1997). Furthermore, the D.C. Circuit has directed that trial courts should apply "an added measure of 'rigor' to motions for summary judgment in employment discrimination cases." *Aka,* 116 F.3d at 879–80 (finding that "the district court correctly adopted this heightened standard in its memorandum opinion"). In resolving summary judgment motions, the Court must view all of the evidence in the light most favorable to the plaintiff. *See id.* at 879; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

### A. Allegations of Sexual Harassment

Plaintiff, a white Mexican–American woman, alleges that her employer, WMATA, subjected her to sexual harassment and sex discrimination in violation of Title VII and the D.C. Human Rights Act. Plaintiff was hired by WMATA as an EEO Compliance Specialist in the Office of Civil Rights ("CIVR") and began working on September 25, 1989. Plaintiff worked under the direct supervision of Ms. Joan Lewis ("Lewis"), an African–American woman EEO Officer in CIVR. Lewis' supervisor was Claude Swanson ("Swanson"), who was director of CIVR at the time. According to plaintiff, Lewis began questioning plaintiff about her sexual habits and experiences and her racial preferences in sexual partners during her first month on the job. In her complaint, plaintiff recites a number of incidents in which Lewis made disparaging comments about plaintiff's clothing and makeup, and accused plaintiff of "not being a Christian." The first incident occurred on October 12, 1989 and incidents allegedly continued until February 9, 1990. On September 30, 1991, Lewis spent approximately two hours reviewing plaintiff's wedding pictures, commenting repeatedly that plaintiff looked "virginal." She also asked plaintiff if she was a virgin when she married. Lewis discussed plaintiff's looks in front of others and asked co-workers to admire plaintiff's legs.

### B. Allegations of National Origin Discrimination

Plaintiff alleges that the harassment was not only sexual in nature but also was directed toward her because of her national origin. Plaintiff contends that the actions of Lewis and Swanson created a racially hostile work environment for employees of Mexican–American descent, and for plaintiff in particular, and constituted national origin discrimination in violation of Title VII and the D.C. Human Rights Act.

According to plaintiff, the first indication of Lewis' discriminatory animus toward Latinos occurred three months after plaintiff began working for WMATA, on December 13, 1989, when Lewis told plaintiff that, despite the fact that she was the Hispanic Coordinator, plaintiff had no right to attend WMATA Latino community meetings. Plaintiff also alleges that Lewis accused plaintiff of conspiring with other Latinos to slander Lewis and cause her trouble. Plaintiff also maintains that Lewis stated that plaintiff's support of the Hispanic community was "de-

grad[ing][to] her as a Black woman." On or about January 30, 1990, Lewis accused plaintiff of considering herself superior to Black women because she is Latino. On February 9, 1990, despite plaintiff's "above average" work performance, Lewis said that she was "disgusted" with plaintiff. Lewis allegedly complained that plaintiff was unable to express herself correctly and that plaintiff should attend English classes. Lewis demanded that plaintiff refrain from speaking Spanish in the hallways at work.

### C. Allegations that WMATA Knew of The Alleged Misconduct and Failed to Act

Plaintiff argues that WMATA was aware of Lewis's propensity for engaging in unwelcome and offensive conduct of a sexual nature even before it hired plaintiff in 1989 and references a number of alleged incidents involving Lewis at page 7 of plaintiff's complaint. Further, plaintiff argues that defendant knew or, with the exercise of reasonable diligence, should have known, of the sexually hostile work environment at WMATA as early as 1989, but took no action to control, reduce or eliminate this hostile work environment. Plaintiff contends that from October 1989 to February 1991, she complained to Swanson about Lewis' inappropriate and abusive behavior. According to plaintiff, Swanson admitted that Lewis' behavior was inappropriate, yet he excused Lewis' actions by stating that this was just "the way she is." On February 15, 1990, Swanson temporarily removed plaintiff from Lewis' direct supervision. From February 15, 1990 to October 9, 1991, plaintiff reported directly to Swanson. Plaintiff alleges that the incidents of harassment abated to some degree, but by no means disappeared.

Plaintiff reported each of the following subsequent incidents to Swanson. On January 7, 1991, Lewis accused plaintiff of talking too loudly and of gossiping about her in Spanish. Lewis reprimanded plaintiff saying that "this [is] not a fiesta." On September 30, 1991, Lewis made comments about plaintiff appearing "virginal." On that same day, plaintiff was called into Lewis' office to speak with another Hispanic employee, who Lewis encouraged not to speak Spanish because it was "rude." In response to plaintiff's complaints, Swanson continued to suggest that plaintiff ignore Lewis' behavior.

On October 5, 1991, Swanson explained to plaintiff that he would be placing her back under Lewis' supervision. According to plaintiff, Swanson said that Lewis would "receive her judgment from a higher being" and recommended to the plaintiff that she "tell [Lewis] off." On October 10, 1991, plaintiff met with an EEOC Federal Investigator to discuss filing a complaint, but decided not to file the complaint at that time because she wanted to resolve the situation internally. In late October 1991, plaintiff met with WMATA officials John Potts, Alma Esparza, and Dr. Warren Eisenhower to discuss attempts to relocate her employment assignment. Plaintiff discussed Lewis' harassment and Swanson's failure to address the problem. On November 18, 1991, when the situation still was unresolved, plaintiff met with EEOC investigator Melvin Bean and signed an affidavit, officially filing her complaint with the EEOC.

### III. Discussion

### A. Plaintiff's Title VII Claims

Title VII makes it unlawful for an employer covered by the statute "to discriminate against an individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's ... sex [or] national origin." 42 U.S.C. § 2000e–2. Title VII's prohibition against discrimination based on sex provides a cause of action for sexual harassment in the workforce. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). For the following reasons, the Court concludes that defendant's arguments for summary judgment on plaintiff's Title VII claims are devoid of merit. Thus, summary judgment is **DENIED** as to those claims.

### 1. The Timeliness of Plaintiff's Title VII Claims

First, WMATA challenges plaintiff's sexual harassment and national origin claims

on procedural grounds. WMATA argues that these claims fail in part because plaintiff allegedly did not timely file complaints about these claims with the EEOC within Title VII's statutory 180 day deadline. The Court rejects this argument.

Title VII provides that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Nevertheless, when a plaintiff alleges a "continuing violation" of Title VII—*i.e.*, that discriminatory working conditions such as harassment are continuing—the complaint is not time-barred if the complaint alleges that at least *one* illegal act took place within the filing period. *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 725 (D.C.Cir.1978). Under this "continuing violation" theory, the applicable limitations period runs from the date of the last discriminatory incident. *Id.* at 724 ("As Congress itself has said, for those 'violations that are continuing in nature' it is appropriate to measur[e] the running of the period from the last occurrence of the discrimination."); *see Webb v. District of Columbia*, 864 F.Supp. 175, 184 (D.D.C.1994).

Here, the plaintiff filed her EEOC complaint on November 18, 1991. According to the plaintiff, the first incident of discrimination she complains of occurred on October 10, 1989, and the most recent act of harassment took place on September 30, 1991. Moreover, plaintiff alleges that WMATA's violation of Title VII continued on November 22, 1991 and December 5th and 6th of that year when WMATA ignored plaintiff's request to stop the harassment. The Court is persuaded that plaintiff has alleged a "continuing violation" and that several of the discriminatory incidents occurred within the 180 day limitations period. Thus, plaintiff's sexual harassment and national origin claims under Title VII were timely.

### 2. Title VII And "Same Sex" Sexual Harassment Claim

█ In supplemental pleadings filed after WMATA's motion for summary judgment, WMATA argues that the Court should grant summary judgment as to plaintiff's Title VII claim because the statute does not provide a cause of action for "same sex" sexual harassment. As support for this argument, WMATA relies on *Ryczek v. Guest Services, Inc.*, 877 F.Supp. 754, 760 (D.D.C.1995) which merely addressed the "same-sex" issue in *dicta*.

Subsequent to the *Ryczek* decision, Judge Joyce Hens Green of this Court resolved the issue decisively in *Williams v. District of Columbia*, 916 F.Supp. 1 (D.D.C.1996). There, the Court unequivocally held that Title VII provides a cause of action for sexual harassment of an employee by a supervisor of the same sex. *Id.* at 7. In reaching this conclusion, the Court noted the "considerable weight of authority in which federal courts have held directly, implied, or stated in *dicta* that same-sex sexual harassment is actionable under Title VII." *Id.* at 7–8 (citing numerous federal cases including *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 148 (2d Cir.1993)(Van Graafeiland, J., concurring), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Morgan v. Mass. Gen. Hosp.*, 901 F.2d 186, 192–193 (1st Cir.1990); *Bundy v. Jackson*, 641 F.2d 934, 942 n. 7 (D.C.Cir.1981); *Barnes v. Costle*, 561 F.2d 983, 990 n. 55 (D.C.Cir.1977); *Raney v. District of Columbia*, 892 F.Supp. 283, 286–88 (D.D.C. 1995); *Marrero–Rivera v. Department of Justice*, 800 F.Supp. 1024, 1027 (D.P.R.1992), *aff'd*, 36 F.3d 1089 (1st Cir.1994); *Joyner v. AAA Cooper Transp.*, 597 F.Supp. 537, 542 (M.D.Ala.1983), *aff'd*, 749 F.2d 732 (11th Cir. 1984)); *see also Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138 (4th Cir.1996); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994).

The *Williams* Court rejected the holding of other federal courts that same-sex harassment is outside of Title VII's scope for two main reasons: (1) the overwhelming weight of authority supports a finding that same-sex harassment is actionable under Title VII; and (2) the reasoning in the cases holding otherwise is unduly flawed. *Williams*, 916 F.Supp. at 8–10. This Court agrees. The present case, like *Williams*, clearly "involved [allegations of] an abuse of power by a super-

**6**

visor over an employee" such that the harassment that plaintiff alleges to have suffered falls "within the contours of sexual harassment law as defined by the Supreme Court: 'Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor [discriminates] on the basis of sex.'" *See id.* at 9 (quoting *Meritor Sav. Bank*, 477 U.S. at 64). Indeed, "but for [Lucero–Nelson's] womanhood" she would not have been subjected to her supervisor's disparaging and taunting remarks. *See Barnes*, 561 F.2d at 990 n. 55.

While the Circuit Courts remain split on the issue, this Court finds that the "weight of the case law and the better reasoned cases support the viability of 'same-sex'" Title VII claims. *See Fredette v. BVP Management Assoc.*, 112 F.3d 1503, 1506–07 (11th Cir.1997)(citing *Barnes*, 561 F.2d at 990 n. 55), *petition for cert. filed*, 66 U.S.L.W. 3170 (Aug. 20, 1997)(No.97–330); *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443 (6th Cir.1997). Accordingly, summary judgment is **DENIED** on the "same sex" sexual harassment claim.

### 3. Plaintiff's Hostile Work Environment Claims

█ Viewing the facts in the light most favorable to the plaintiff, as the Court must do at this juncture, the Court also holds that plaintiff has alleged a viable hostile work environment claim as a matter of law.[1] Accordingly, WMATA's motion for summary judgment on these counts must be **DENIED.**

As emphasized by the D.C. Circuit in *Gary v. Long*, 59 F.3d 1391, 1395 (D.C.Cir.1995), "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.*; see *Harris*, 510 U.S. at 21. Furthermore, the Supreme Court has stated that:

Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will distract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers ... [and therefore] offends Title VII's broad rule of workplace equality.

*Harris*, 510 U.S. at 22.

In order to hold WMATA liable for Lewis' conduct, plaintiff must also show that "[WMATA] knew or should have known of the alleged harassment and failed to take remedial action." *Gary*, 59 F.3d at 1397; *see Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 198–99 (5th Cir.1992)(holding that employer's transfer of employee back to supervisor who had previously harassed her and its refusal to take remedial measures constituted sexual harassment); *Bundy v. Jackson*, 641 F.2d at 943–44 (holding that where agency officials "who had some control over employment and promotion decisions had full notice of harassment committed by agency supervisors and did virtually nothing to stop or even investigate the practice," plaintiff had stated a prima facie case of a sexually hostile working environment).

Plaintiff has indeed shown that WMATA knew or should have known of Lewis' harassment. In addition to the allegations that WMATA knew of Lewis' propensity for engaging in unwelcome and offensive conduct of a sexual nature before it hired plaintiff in 1989, plaintiff alleges that, from 1989 to 1991, she complained to Swanson about sexual and national origin harassment by Lewis. Plaintiff also reported subsequent acts of abuse to Swanson but he merely suggested that plaintiff ignore or accept Lewis' behavior.

█ WMATA, however, argues that under *Gary*, summary judgment should be granted

---

1. The Court holds that WMATA is not entitled to summary judgment as a matter of law on plaintiff's Title VII national origin discrimination claim either. As discussed previously, WMATA challenges this claim on procedural grounds. WMATA does not, however, challenge the merits of plaintiff's Title VII national origin claim as a matter of law. Nor could it do so successfully. Viewing the facts in the light most favorable to the plaintiff, the Court is satisfied that the plaintiff has set forth a *prima facie* case of Title VII national origin discrimination.

in its favor because the detailed grievance policy, which absolved WMATA from liability in *Gary,* was in effect when plaintiff made her complaints. The Court holds, however, that *Gary* does not absolve WMATA from liability in the present case simply because WMATA had the procedures in place. If WMATA did not adequately use those procedures to assist a victim, as plaintiff clearly contends, WMATA could still be held responsible.

Thus, on the evidence presented, the Court finds that plaintiff has set forth a valid prima facie case of hostile work environment in violation of Title VII.

### B. Discrimination Claims under the D.C. Human Rights Act

■ Defendant seeks dismissal of the D.C. Human Rights Act claims ("the Act") on the grounds that WMATA is immune from tort liability and thus, not subject to liability under the Act. Plaintiff responds that defendant is liable under the Act because (1) Maryland, Virginia and the District of Columbia "have enacted laws virtually identical to the Human Rights Act, protecting employees from discrimination or harassment on the grounds of sex, race or national origin"; and (2) "by virtue of these laws each WMATA Compact signatory has assented to holding WMATA responsible for its own acts of discrimination and harassment in accordance with the waiver of tort immunity in Section 80 of the Compact." Pl.'s Mem. In Opp. To Def. Mot. For Summ. J. at 12.

WMATA was established by virtue of the Compact signed by Maryland, Virginia and the District of Columbia, and agreed upon by Congress ("the Compact"). Pub.L. No. 89–774, 80 Stat. 1324 (1966)(codified as amended at D.C.Code Ann. § 1–2431). There is ample precedent holding that WMATA is not subject to the Act on the grounds that WMATA is an interstate compact agency and instrumentality of three separate jurisdictions— Virginia, Maryland, and D.C. *See, e.g., Gay Activists Alliance of Washington, D.C., Inc. v. WMATA,* No. 78–2217, slip op. at 6

(D.D.C. July 5, 1979)); 4 Op. Corp. Coun. at 205, 206 (opinion by then Acting Corporation Counsel Judith Rogers).[2]

Furthermore, pursuant to the WMATA Compact, one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States. *OPIEU, Local 2 v. WMATA,* 724 F.2d 133, 139 (D.C.Cir.1983); *Middleton v. WMATA,* No. 92–0946, slip op. (D.D.C. Feb. 26, 1993); *see also Delaware River and Bay Auth. v. Carello,* 222 A.2d 794, 798 (Del.Ch.1966)(holding generally that "where an interstate compact exists, one state to such an arrangement may not unilaterally legislate so as to place burdens on the compact in question"). Accordingly, summary judgment is **GRANTED** on plaintiff's D.C. Human Rights Act claims.

### C. 42 U.S.C. § 1983

■ Plaintiff alleges that the conduct of Lewis, Swanson and other WMATA employees occurred under color of state law, that the conduct was intentional, and the conduct caused deprivation of plaintiff's rights, privileges, or immunities secured by the United States Constitution and laws, in violation of 42 U.S.C. § 1983. WMATA argues, and this Court concurs, that plaintiff's § 1983 claim fails as a matter of law for two reasons: (1) Section 1(e) of the WMATA compact between Maryland, Virginia and the District of Columbia exempts WMATA from § 1983 claims and (2) only "persons" are subject to suit under § 1983.

Several courts have dismissed § 1983 claims against WMATA on immunity grounds. *See Sanders v. WMATA,* 819 F.2d 1151, 1152–53 (D.C.Cir.1987); *Ebai v. WMATA,* No. 92–51, slip op. at 4–5 (D.D.C. July 1, 1993); *Hagins v. WMATA,* No. 91–3085, slip op. (D.D.C. March 29, 1993).

Moreover, the Court is persuaded that as an arm of the state WMATA is not a "person" within the meaning of the statute. *See Will v. Michigan Dep't of State Police,* 491

---

**2.** In *Williams v. W.M.A. Transit Co.,* 472 F.2d 1258, 1264 (D.C.Cir.1972), the court held that the Corporation Counsel's rulings "are entitled to weight as construction of the District of Columbia Code unless plainly unreasonable or contrary to ascertainable legislative intent."

U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(holding that a state or an arm of a state is not a "person" subject to suit under § 1983 pursuant to the Eleventh Amendment). Thus, WMATA's motion for summary judgment is **GRANTED** on plaintiff's § 1983 claim.

### D. Intentional Infliction of Emotional Distress

■ Defendant has also moved for summary judgment on plaintiff's claim of intentional infliction of emotional distress, a common law tort. WMATA argues that it is exempt from tort liability on the grounds that plaintiff's remedies for her emotional distress claim are subject to statutory remedies provided by the District of Columbia Workers Compensation Act ("WCA"), D.C.Code Ann. § 36–301 et seq.

To survive summary judgment on her claim of intentional infliction of emotional distress, plaintiff must produce competent evidence that WMATA (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. Rendall–Speranza v. Nassim, 942 F.Supp. 621 (D.D.C.1996); see Burkhart v. WMATA, 1996 WL 813280 (D.D.C. June 26, 1996), aff'd in part, 112 F.3d 1207 (D.C.Cir.1997)(affirming judgment against WMATA on assault, battery, and infliction of emotional distress claim). In the context of employment discrimination, such violations are particularly egregious when manifested as "a pattern or campaign of harassment, intimidation or abuse." Green v. American Broad. Co., Inc., 647 F.Supp. 1359, 1362 (D.D.C.1986); see Underwood v. National Credit Union Admin., 665 A.2d 621 (D.C.1995).

It is well-settled that, "when there is a 'substantial question' whether the WCA applies, the administrative agency charged with implementing the statute, given its special expertise, has 'primary jurisdiction' to 'make the initial determination concerning cover-

age' before the Courts can exercise jurisdiction." Underwood, 665 A.2d at 631 (quoting Harrington v. Moss, 407 A.2d 658, 661 (D.C. 1979)). In this case, the Department of Employment Services ("DOES") is the agency that would have jurisdiction if judicial review is inappropriate at this stage. Id.; see also Tredway v. District of Columbia, 403 A.2d 732, 734 (D.C.1979), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979).

The resolution of this claim turns on the interpretation of the term "injury" within the meaning of the WCA. Generally, DOES has primary jurisdiction over a tort claim where the plaintiff has suffered an "injury" within the meaning of the WCA and the "injury" is clearly covered by the statute. Under the WCA, "injury" is defined as "accidental injury or death arising out of and in the course of, employment ...." D.C.Code Ann. § 36–301(12)(emphasis added).[3] Defendant claims "injury" should be broadly interpreted and that plaintiff's alleged psychological injuries are included in the definition of "injury" under the WCA such that the agency would have jurisdiction over plaintiff's entire tort claim and the Court would not.

Plaintiff responds that, "by definition, injuries to an employee that are intended by the employer fall outside of the WCA's exclusivity provisions even though they are work-related, because they are nonaccidental." Grillo v. National Bank of Wash., 540 A.2d 743, 748 (D.C.1988)(emphasis added)(citing Rustin v. District of Columbia, 491 A.2d 496, 501–02 (D.C.), cert. denied, 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985)).

The District Court addressed this very issue in Webb v. Hyman, 861 F.Supp. 1094 (D.D.C.1994). The Webb Court held that an intentional infliction of emotional distress claim, with negligible physical consequences, is not barred by the WCA when it is linked to a sexual harassment claim. Id. at 1101–02 (relying on Coleman v. American Broad. Co., 1985 WL 365, at *4 (D.D.C.1985)("Since [the intentional infliction of emotional distress] claim [is] so inextricably linked to [plaintiff's]

---

3. The plaintiff concedes that "no court appears to have decided the question of whether claims for non-disabling emotional injuries inflicted by employers are barred by the DCWCA." Yet, plaintiff argues that under D.C. case law, the

exclusivity provisions of analogous statutes ("CMPA") do not bar D.C. employees from suing employers for intentional infliction of emotional distress. See Newman v. District of Columbia, 518 A.2d 698 (D.C.1986).

sexual harassment claim, a cause of action not covered by the Act, plaintiff's right to recovery should not be confined exclusively to the WCA.)"

The D.C. Court of Appeals ("DCCA"), in persuasive precedent, also held that a claim of intentional infliction of emotional distress based on sexual harassment is actionable under both the WCA *and* common law tort. *Underwood,* 665 A.2d at 629–634. In *Underwood,* the DCCA held that courts have jurisdiction to consider a plaintiff's intentional infliction of emotional distress claim where the tort injury is attributable to sexual harassment. 665 A.2d at 630–634. Such claims, reasoned the Court, " 'clearly' fall outside of the WCA definition of disabling injuries as a matter of law." *Id.* at 630.

In supplemental briefs, the parties addressed the applicability of *Underwood* to the present case. Plaintiff and defendant both argue that the Court's holding in *Underwood* supports their respective positions in the present case.

This Court is persuaded by plaintiff's argument that *Underwood* supports plaintiff's position, not WMATA's. The DCCA reasoned that, where emotional distress is based on sexual harassment, the tort falls outside the WCA's definition of "injury" because the injury neither "arise[s] out of" employment nor is it inflicted "because of employment." *Id.* at 632–633 (citing D.C.Code Ann. § 36–301(12)). "We conclude as a matter of law that sexual harassment is not 'a risk involved in or incidental to' employment." *Id.* at 634. In reaching this conclusion, that court relied upon the D.C. Circuit's decision in *Fazio v. Cardillo,* 109 F.2d 835, 71 App. D.C. 264 (1940), in which the Circuit reached the same conclusion in interpreting the Longshoremen's and Harbor Workers' Compensation Act, the predecessor of the WCA. *See Underwood,* 665 A.2d at 635. Equally important, the Underwood court relied upon significant public policy concerns including the fact that a contrary conclusion would thwart the purposes of the D.C. Human Rights Act. *Id.* at 637.

The Court went on to hold that

it is clear that, when emotional distress allegedly attributable to sexual harassment (in contrast with some other cause) results in disabling injuries in fact, the language of the WCA itself easily demonstrates that these are not statutory "injuries," and thus are not compensable disabilities, under the WCA. Accordingly, ... the statutory language does not present a "substantial question" whether disabling injuries from emotional distress caused by sexual harassment are covered by the WCA; such injuries *"clearly* are not compensable under the statute."

Id. at 633 (citations omitted)(emphasis added).

WMATA attempts to avoid this holding, arguing that the plaintiff's allegations in *Underwood* are distinguishable because that claim solely involved sexual harassment while Lucero–Nelson's is a "hybrid" claim based on allegations of sex *and* national origin discrimination. In an attempt to support this argument, WMATA cites to the *Underwood* Court's pronouncement in a footnote:

We are not, therefore, presented with an emotional distress claim grounded only in part on sexual harassment; for example, a pattern of actionable emotional abuse by a supervisor over a period of months or years with no perceptible sexual content, followed by the supervisor's effort over succeeding months to reorient the relationship through sexual overtures and threats. In this example, the sexual relationship would be a part—albeit a significant part of the emotional distress claim.

*Id.* at 633 n. 18.

Based on this footnote, WMATA contends that the *Underwood* holding only extends to tort claims based exclusively on sexual harassment, not "hybrid cases" of sexual harassment and general work place harassment. WMATA contends that plaintiff's complaint represents such a "hybrid case" because it not only contains allegations of sexual harassment, but also "overwhelmingly" alleges national origin discrimination and work place harassment.

WMATA reads *Underwood* out of context. Highlighting the linchpin in its holding, the *Underwood* court explained that

the fact that appellant's common law tort claim for emotional distress is premised on the same events that underlie her Human Rights Act claim for sexual harassment profoundly affects the analysis. As a result, her alleged disability "clearly" falls outside the WCA definition of disabling injuries as a matter of law, and appellant is thus free to file suit for emotional distress in ... [c]ourt rather than submitting that claim to DOES.

*Id.* at 630.

Fatal to defendant's position, the *Underwood* Court found that plaintiff Underwood's claim, like plaintiff's claims here, presented

> a case in which the actions and events allegedly reflecting common law intentional infliction of emotional distress ... are the same as those allegedly reflecting statutory sexual harassment ... in the same complaint. Thus, this is a case in which a jury could find that [defendant's] behavior toward [plaintiff] that formed the basis of her sexual harassment and emotional distress claims began with his sexual advances, and that this behavior inflicted their entire working relationship thereafter ....

*Id.* at 633 n. 8.

The Court finds that plaintiff's case fits this paradigm. Defendant's characterization of plaintiff's complaint is inaccurate; the complaint does not merely contain a sprinkling of complaints about sexual harassment. Rather, in the Court's view, gender discrimination is a major theme in both plaintiff's allegations of sexual harassment *and* national origin discrimination. Indeed, some of plaintiff's claims of sexual harassment, national origin discrimination and so called "general work place harassment" claims have sexual undertones. For example, plaintiff alleges that her supervisor, Lewis questioned her about her racial preferences in sexual partners. Thus, even though plaintiff seeks damages in tort for both sexual harassment and other forms of discrimination, the fact that her sexual harassment and national origin claims are based on the same facts is sufficient to satisfy *Underwood.* Accordingly, defendant's motion for summary judgment is **DENIED** as to her intentional infliction of emotional distress claim.

### E. Punitive Damages

█ Plaintiff seeks punitive damages against WMATA based on the common law governing torts and the Civil Rights Act of 1991. WMATA moves for summary judgment of plaintiff's claims for punitive damages on the grounds that WMATA enjoys sovereign immunity from punitive damages claims. WMATA is correct.

Title VII and the case law governing plaintiff's tort claim do not afford an award of punitive damages. WMATA correctly argues that Section 102(b)(1) of the Civil Rights Act of 1991 states on its face that punitive damages are not recoverable against "a government, government agency or political subdivision." As explained above, Article II, Section 4 of the WMATA Compact provides that WMATA is a governmental unit and instrumentality of the Compact signatories (Virginia, Maryland and the District). *Teart v. WMATA,* 686 F.Supp. 12, 13 (D.D.C.1988)(citing *Qasim v. WMATA,* 455 A.2d 904, 905 (D.C.1983)). Congress and the individual signatories have conferred the same Eleventh Amendment sovereign immunity that each individual signatory enjoys. *Sanders v. WMATA,* 819 F.2d 1151, 1154 (D.C.Cir.1987); *Morris v. WMATA,* 781 F.2d 218, 225 (D.C.Cir.1986); *Clarke v. WMATA,* 654 F.Supp. 712, 714–15 (D.D.C.1985), *aff'd,* 808 F.2d 137 (D.C.Cir.1987).

This immunity applies except where expressly waived by statute. Section 80 of the Compact, partially waives WMATA's Eleventh Amendment immunity.[4] *Morris,* 781

---

4. Section 80 of the Compact provides, in pertinent part, that:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable sig-

> natory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title

F.2d at 221. But "there is no express waiver of immunity for punitive damages in the WMATA Compact and we will not imply one, given the settled state of District of Columbia law." *Petticolas v. WMATA,* No. 87–2516, 1988 WL 30754, slip op. at *3 (D.D.C. Mar. 22, 1988); *see also Varbero v. WMATA,* No. 85–3397, slip op. (D.D.C. July 15, 1986); *Wainwright v. WMATA,* 903 F.Supp. 133, 136 (D.D.C.1995)(citing cases). This omission is problematic for a plaintiff seeking punitive damages against WMATA because "[i]n the absence of express statutory authority, punitive damages are not recoverable against the District of Columbia." *Teart,* 686 F.Supp. at 13 (citing *Smith v. District of Columbia,* 336 A.2d 831 (D.C.1975)(per curiam); *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)(punitive damages are not awarded against a municipality unless expressly provided by statute)). Plaintiff has failed to cite any statute that expressly awards punitive damages against WMATA and generally, this omission is fatal to plaintiff's position. *See Teart,* 686 F.Supp. at 13; *Excavation Constr., Inc. v. WMATA,* 624 F.Supp. 582, 588 (D.D.C.1984).

The only exception to this rule was set forth in *dicta* by the D.C. Court of Appeals in *Smith. Smith,* 336 A.2d at 832. *Smith* established that, in the absence of express statutory authority, a showing of "extraordinary circumstances" might warrant an award of punitive damages against otherwise immune municipalities. *Id.* Although, as this Court has noted before, "[n]owhere in Smith is there guidance as to the nature, frequency, duration, intensity or other characteristics of the requisite 'extraordinary circumstances.'" *Wainwright,* 903 F.Supp. at 137.

Plaintiff argues that "extraordinary circumstances" exist in this case. Plaintiff claims that the discrimination she suffered was particularly onerous and egregious because "the continuing racial and sexual harassment [was committed and perpetuated] by the very officials of WMATA who

shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

were charged with enforcement of the civil rights laws. Under these extraordinary circumstances, a jury should be permitted to evaluate the facts and grant punitive damages against WMATA if they deem them appropriate." Pl. Mem. In Opp. at 23.

Plaintiff's major weakness here is her failure to cite any case law in support of her theory that the facts of this case warrant application of the "exceptional circumstances" exception. In fact, the court is unaware of *any* case in which a court found that the "exceptional circumstances" exception applied. Several courts that have considered the exception have declined to apply the exception to the particular facts before them. *See Rieser v. District of Columbia,* 563 F.2d 462, 481 (D.C.Cir.1977), *modified,* 580 F.2d 647 (D.C.Cir.1978); *Wainwright,* 903 F.Supp. at 137 (finding no extraordinary circumstances where plaintiff suffered injuries on escalator even though "after numerous entrapments in Metro escalators, WMATA was well aware of the dangers. Its own Task Group identified safety problems and recommended corrective measures."); *Webb v. Hyman,* 861 F.Supp. 1094, 1118 (D.D.C.1994)(finding, in a sexual harassment case, that "no extraordinary circumstances exist[ed] to counteract the sound public policy underlying this rule [against the award of punitive damages against the District of Columbia]"); *Teart,* 686 F.Supp. at 13 (declining to apply the exception where a decedent was electrocuted in station after WMATA failed to install essential equipment).

These holdings demonstrate that courts have narrowly construed the exception to strongly protect "the sound public policy underlying this rule [against punitive damages], that '[s]ince punishment is the objective, the people who would bear the burden of the award—the citizens—are the self-same group who are expected to benefit from the public example which the punishment makes of the wrongdoer.'" *Webb,* 861 F.Supp. at 1118 (quoting *Smith,* 336 A.2d at 832).

D.C.Code Ann. § 1–2431(80).

**12**

In *Rieser,* the D.C. Circuit declined application of the exception under circumstances that are arguably more egregious than those present here. 563 F.2d at 481–82. The Circuit considered an appeal of a district court order denying an award of punitive damages against several defendants, including the D.C. government and its officials. The plaintiff parole officers breached their duty to disclose the criminal background of a parolee who had received a job at a housing complex as a result of this failure to disclose this information. The parolee's criminal history included several attacks and attempted rapes of women. Eventually, the parolee raped and murdered a resident of the building where he was employed. *Rieser,* 563 F.2d at 481. This circuit declined to apply the exception. *Id.* at 481–82.

For the foregoing reasons, the Court holds that WMATA is entitled to summary judgment on plaintiff's claim for punitive damages.

### IV. CONCLUSION

Accordingly, it is

**ORDERED** that defendant's Motion for Summary Judgment is **GRANTED** as to plaintiff's claims under the D.C. Human Rights Act (Counts II and IV); and it is

**FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** as to plaintiff's claims under 42 U.S.C. § 1983 (Count VI); and it is

**FURTHER ORDERED** that plaintiff's claims under the D.C. Human Rights Act (Counts II and IV) and under 42 U.S.C. § 1983 (Count VI) are **DISMISSED WITH PREJUDICE**; and it is

**FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** as to plaintiff's Title VII claims (Counts I and III); and it is

**FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** as to plaintiff's claim of intentional infliction of emotional distress (Count V); and it is

**FURTHER ORDERED** that plaintiff's outstanding motion for sanctions [38–1] is **DENIED;** and it is

**FURTHER ORDERED** that a status conference shall be held on March 20, 1998 at 10:00 a.m. in Courtroom # 9.